# United States Court of Appeals for the Federal Circuit

04-1552

ROTHE DEVELOPMENT CORPORATION,

Plaintiff-Appellant,

v.

DEPARTMENT OF DEFENSE and
DEPARTMENT OF THE AIR FORCE,

Defendants-Appellees.

David F. Barton, The Gardner Law Firm, of San Antonio, Texas, argued for plaintiff-appellant. With him on the brief was Jay K. Farwell.

David White, Attorney, Appellate Section, Civil Rights Division, United States Department of Justice, of Washington, DC, argued for defendants-appellees. With him on the brief were R. Alexander Acosta, Assistant Attorney General, Sheldon Bradshaw, Deputy Assistant Attorney General, and David K. Flynn, Chief.

John H. Findley, Pacific Legal Foundation, of Sacramento, California, for amici curiae Pacific Legal Foundation and Center for Equal Opportunity.

Appealed from: United States District Court for the Western District of Texas

Judge Xavier Rodriguez

# United States Court of Appeals for the Federal Circuit

04-1552

ROTHE DEVELOPMENT CORPORATION,

Plaintiff-Appellant,

v.

DEPARTMENT OF DEFENSE and
DEPARTMENT OF THE AIR FORCE,

Defendants-Appellees.

_____

DECIDED:  June 28, 2005
_____

Before MICHEL, Chief Judge, NEWMAN and GAJARSA, Circuit Judges.

MICHEL, Chief Judge.

Rothe Development Corporation ("Rothe") appeals from the judgment of the United States District Court for the Western District of Texas.  The primary issue in this appeal is the district court's grant of summary judgment to the United States Department of Defense and the United States Department of the Air Force (collectively, the "government") on Rothe's claim of facial unconstitutionality as to the presently applicable, 2002 reauthorization of section 1207 of the National Defense Authorization Act of 1987, Pub. L. No. 99-661, 100 Stat. 3859, 3973 (1986), codified at 10 U.S.C. § 2323, as amended by the Bob Stump National Defense Authorization Act for Fiscal Year 2003, Pub. L. No. 107-314, § 816, 116 Stat. 2458, 2610 (2002).  See Rothe Dev. Corp. v. United States Dep't of Def., 324 F. Supp. 2d 840 (W.D. Tex. 2004) ("Rothe IV").  The government urges that we lack jurisdiction over this constitutional issue because it

is unripe for adjudication and for other reasons. Also at issue are the district court's holdings that Rothe's damages and equitable-award-of-a-contract claims are moot, as well as the district court's denial of Rothe's motion for attorney fees related to other claims on which Rothe prevailed.

This case was submitted for decision after oral argument on March 7, 2005. We hold that we do have jurisdiction to consider the facial constitutionality of the present reauthorization of section 1207 but that the record is inadequate to decide the issue because the district court declined to provide the necessary opportunity to expand the record despite explicit remand instructions. We, therefore, have no option but, once again, to vacate and remand to the district court for necessary development of the evidentiary record. We further hold that Rothe's damages claim is not moot but its equitable award of a contract claim is moot. Finally, we hold that because Rothe did not preserve for appeal its contention that the district court erred in denying its request for attorney fees, the denial stands.

## I

We have considered this case in a prior appeal. Rothe Dev. Corp. v. United States Dep't of Def., 262 F.3d 1306 (Fed. Cir. 2001) ("Rothe III"); see also Rothe Dev. Corp. v. United States Dep't of Def., 194 F.3d 622 (5th Cir. 1999) ("Rothe II") (transferring the case to this court); Rothe Dev. Corp. v. United States Dep't of Def., 49 F. Supp. 2d 937 (W.D. Tex. 1999) ("Rothe I").

Because we extensively discussed the factual and legal background of this case in Rothe III, we need not repeat the details here. See Rothe III, 262 F.3d at 1313-16. In short, Rothe alleges that it was denied equal protection under the Fifth Amendment's

Due Process Clause by the enactment and application of section 1207, which provides certain benefits to businesses controlled by socially and economically disadvantaged individuals ("SDBs"). Section 1207 sets a goal that five percent of the total dollar amount of defense contracts per year be awarded to SDBs. Regulations enacted pursuant to section 1207 provide mechanisms for achieving that goal. The mechanism most important in this case is the price-evaluation adjustment, which authorized a contracting agency of the Department of Defense to raise the bid of non-SDB bidders by as much as ten percent.

Section 1207 was originally enacted for a three-year time period to end in 1990. Prior to the most recent reauthorization, section 1207 was reauthorized in 1989 for the period from 1990 to 1993, in 1992 for the period from 1993 to 2000, and in 1999 for the period from 2000 to 2003. See Rothe III, 262 F.3d at 1313-14 (collecting citations to prior reauthorizations). Most recently, in December 2002, section 1207 was reauthorized through September 2006. Bob Stump National Defense Authorization Act for Fiscal Year 2003, Pub. L. No. 107-314, § 816, 116 Stat. 2458, 2610 (2002).

Rothe alleges that it was harmed by the application of section 1207 to the bidding process for a contract for computer-related services with an Oklahoma Air Force base in 1998. Although Rothe submitted the lowest bid, it lost the contract to International Computer and Telecommunications, Inc. ("ICT") when Rothe's bid was increased by ten percent because ICT qualified as an SDB and Rothe did not. Rothe brought suit in federal district court alleging, inter alia, that section 1207 is unconstitutional as enacted and applied. The district court granted summary judgment in favor of the government. Rothe I, 49 F. Supp. 2d at 953-54.

In Rothe III, we reversed the district court's judgment, holding that the district court did not properly apply strict scrutiny in analyzing the constitutionality of section 1207 and that it erred in relying on evidence that post-dated the various reauthorizations of section 1207 under consideration. 262 F.3d at 1332. On remand, the district court held that Rothe's claim to damages and to an equitable award of the 1998 contract were moot. On the merits, the district court held that the reauthorization of section 1207 in 1992 was facially unconstitutional but the present, i.e., 2002, reauthorization was not. Rothe IV, 324 F. Supp. 2d at 860. Because the government did not appeal the district court's decision as to the invalidity of the 1992 reauthorization, only the present reauthorization is before us on appeal. The district court also denied Rothe's request for attorney fees.

Rothe filed a timely notice of appeal from the final judgment of the district court and we have jurisdiction under 28 U.S.C. § 1295(a)(2).

## II

Rothe has made claims for (A) damages, (B) an equitable award of the 1998 contract, and (C) a declaration that section 1207 is facially unconstitutional. The government argues that jurisdiction is lacking for each of these claims for one or more of the following reasons: the claim is moot, Rothe lacks standing to assert the claim, and the claim is unripe.

## A

Considering first Rothe's claim to damages, the district court held, and the government argues on appeal, that jurisdiction over Rothe's damages claim is lacking on mootness grounds because the government has already tendered the maximum

amount to which Rothe could be entitled.[1]  In general, a claim must be dismissed as moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (internal quotation omitted).  The tender of the entire amount of damages claimed by a plaintiff moots the damages claim.  A.A. Allen Revivals, Inc. v. Campbell, 353 F.2d 89, 90 (5th Cir. 1965) (per curiam); Holstein v. City of Chicago, 29 F.3d 1145, 1147 (7th Cir. 1994) ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate . . . ." (internal quotation omitted)).

In this case, the district court held that Rothe's damages claim is moot because the government tendered $10,000, which is the maximum amount available to Rothe for a Little Tucker Act claim, see 28 U.S.C. § 1346(a)(2), and the maximum amount claimed in the First Amended Complaint.  Rothe disagrees, contending that $10,000 "was never paid by the Government or accepted by Rothe."  Rothe thus disputes both whether a tender was made and whether a tender, if made, was accepted.  Addressing the latter contention first, Rothe's claimed non-acceptance of a tender is irrelevant because a plaintiff may not prolong a case merely by refusing to accept a valid tender.  Holstein, 29 F.3d at 1147 (holding that a plaintiff "may not spurn this offer of all the damages he is owed and proceed to trial").

The questions remains, however, whether a valid tender was made by the government.  "The essential characteristics of a tender are an unconditional offer to tender, coupled with a manifested ability to carry out the offer, and production of the

---

[1]     The government does not raise either a standing or ripeness argument as to the damages claim.

04-1552                                    5

subject matter of the tender." Riley-Stabler Constr. Co. v. Westinghouse Elec. Corp., 396 F.2d 274, 278 (5th Cir. 1968) (internal quotation omitted).

Because the facts surrounding the government's alleged tender of $10,000 are not described in sufficient detail in the district court's summary judgment order or the record on appeal, we questioned the parties at oral argument. Government counsel stated:

> [T]he government did offer $10,000 to Rothe, submitted a letter stating that it would satisfy Tucker Act damages of $10,000. There is a letter to that effect that was written by the Employment Litigation Division of DOJ that was sent to Rothe. . . . I presume that Rothe either rejected it or did not respond because I don't know of any reply that Rothe made.

Even assuming government's counsel's factual contentions to be true, they do not suffice to show a tender. At most, the government's contentions demonstrate only an offer to tender. Under Riley-Stabler Construction, however, a mere offer to perform does not suffice. 369 F.2d at 278. Because the government has provided no evidence that it produced the subject matter of the tender, e.g., by providing Rothe with a $10,000 check or depositing such a check with the court, the government has failed to demonstrate it made a valid tender. See id. Accordingly, Rothe's damages claim is not moot and the judgment in favor of the government on this claim must be vacated.

**B**

The district court also dismissed for mootness Rothe's claim to an equitable award of the 1998 contract. The district court reasoned that Rothe could not prove that it would have been awarded the contract "but for the allegedly unlawful conduct," because "the conduct Rothe challenges likely affected both the number of contractors who bid for the 1998 contract as well as the pricing of the offers submitted."

Rothe contends that this portion of the district court's jurisdictional order was effectively a partial summary judgment order and the district court erred by resolving against it a genuine issue of material fact. We agree with Rothe that the district court's decision turned on the determination that Rothe had failed to meet its burden of proving that it would have been awarded the contract but for the allegedly unlawful action, which is a matter related to the merits of Rothe's case, not mootness. This error in the district court's analysis, however, is harmless.

Rothe's claim to an award of the 1998 contract is moot because the contract was directed to the provision of computer-related services over a specific time period that has now passed. As we described in Rothe III, "[t]he contract in this case was scheduled to expire on September 30, 1999. However, the Air Force exercised an option to extend ICT's contract through September 30, 2001." 262 F.3d at 1315. Because an award of a contract that expired no later than 2001 could provide Rothe no present or future relief, Rothe's claim is moot. Furthermore, Rothe's briefs demonstrate that it does not even seek an award of the now-expired contract. Instead, it claims that "[t]he services under all the contracts are essentially the same, and award can be made through extension of Rothe's current contract." Thus, because the time period associated with the 1998 contract has passed and, in any event, Rothe does not actually seek an award of the 1998 contract, we affirm the district court's dismissal of Rothe's claim to an equitable award of the 1998 contract.

# C

## 1

The government also contends that the court lacks jurisdiction to consider Rothe's claim that section 1207, as presently reauthorized, is facially unconstitutional. Jurisdiction is lacking, the government contends, because the price-evaluation adjustment component of section 1207 has been serially suspended by the Department of Defense since October 1998 under the authority of 10 U.S.C. § 2323(e)(3)(B).

The parties focus on the "voluntary cessation" line of mootness cases, with the cessation in this case being the suspension of the price-evaluation adjustment. A defendant's "voluntary cessation" of alleged misconduct does not moot a claim unless the defendant proves it to be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 189 (2000) (describing this as a "heavy burden" of proof).

In this case, the district court found that the government failed to meet its burden of proving mootness. The government merely repeats here the sole evidence offered before the district court -- that the case is moot because the price-evaluation adjustment has been suspended since October 1998. The district court, however, found that the current suspension of the price-evaluation adjustment is insufficient, by itself, to demonstrate that the price-evaluation adjustment will remain suspended, especially considering the heavy burden of proof associated with mootness. Indeed, some facts suggest that the price-evaluation adjustment will not remain suspended. As the district court noted, "Defendants have also acknowledged SDB participation has steadily dropped over recent years and come closer to falling below the 5% quota." Because

the continued viability of the suspension depends on the continued fulfillment of the five percent goal, this fact tends to undermine the government's proof that the price-evaluation adjustment will remain suspended.

Accordingly, we agree with the district court that the government has failed, at this time, to demonstrate that the price-evaluation adjustment will remain suspended in the future, even though the continued suspension of section 1207 along with other facts may eventually be sufficient to establish mootness.

The government responds by analogizing the suspension of the price-evaluation adjustment to a repeal of a law, citing to <u>National Black Police Ass'n v. District of Columbia</u>, in which the United States Court of Appeals for the D.C. Circuit held that "the mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged law likely will be reenacted." 108 F.3d 346, 349 (D.C. Cir. 1997).

The government's analogy to a repeal is inapt because the future application of the price-evaluation adjustment does not depend on "the mere power to reenact a challenged law."[2] Instead, because the price-evaluation adjustment has only been suspended, not repealed, whether the price-evaluation adjustment will be applied in the future depends on whether the government meets the five percent goal. To prove mootness, therefore, the government was required, but failed, to demonstrate it to be "absolutely clear" that the government will continue to meet the five percent goal.

---

[2] Although section 1207 has been repeatedly reauthorized in the past, we note that section 1207 will lapse in 2006 if it is not once again reauthorized. If section 1207 is allowed to lapse, the government's repeal-related argument would, at that time, have much more force than it does at the present.

The government also cites Troiano v. Supervisor of Elections, which states that "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur." 382 F.3d 1276, 1283 (11th Cir. 2004) (emphasis omitted). Troiano involved a class action suit brought by visually impaired and blind citizens to require the government to provide audio equipment to assist in voting. After the election in question, the election official provided audio equipment to each voting precinct. In dismissing for mootness, the Troiano court found that "all of the available evidence" indicated a genuine effort "to make elections consistently accessible to the visually impaired" and that there was "no evidence that she [the election official] is likely to remove the new machines in the future." Id. at 1286.

In addition to the fact that Troiano does not bind our decision, we find it materially distinguishable from this case. In Troiano, the election official took actions demonstrating a strong commitment to make audio equipment available to visually impaired and blind citizens, whereas here the government has not provided sufficient evidence that the allegedly offending conduct will not recur because it has not demonstrated that the five percent goal will continue to be met. Furthermore, unlike Troiano, in which the decision whether or not to provide audio equipment was in the discretion of the election official, in this case, the government is required by statute to apply the price-evaluation adjustment, so long as the five percent goal was not met in the previous year. The rebuttable presumption analysis of Troiano thus does not apply in this case.

Accordingly, because the government has not proven that the suspension of the price-evaluation adjustment will remain in place, it has failed to prove mootness.[3]

**2**

We now turn to the government's argument that Rothe lacks standing to assert the claim that the present reauthorization of section 1207 is facially unconstitutional. Notably, because the government does not bear the burden of proof on standing, its failure to demonstrate the likelihood that the suspension will remain in place does not foreclose this argument. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing].").  To establish standing, a plaintiff must demonstrate "(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, 528 U.S. at 180-81 (internal quotation omitted).

The government contends that Rothe lacks standing because the potential for recurrence of the claimed offending conduct is "conjectural or hypothetical," as compared to "actual or imminent." For its standing argument, the government relies on the same evidence that it presented for mootness, claiming that (1) Congress had

---

[3]       The parties also dispute whether Rothe's facial claim is limited to the price-evaluation adjustment or is directed to section 1207 more broadly.  Because the only argument made by the government is that the suspension of the price-evaluation adjustment renders the claim moot, we need not resolve that dispute.  We also need not address the district court's holding that the facial claim is not moot because the application of section 1207 is capable of repetition yet evading review due to the yearly reevaluation of the suspension.

passed the suspension provision before Rothe filed its original complaint, (2) the price-evaluation adjustment was in fact suspended by the Department of Defense before Rothe filed its first amended complaint, and (3) the suspension has remained in place to this point.

Because "standing is to be determined as of the commencement of suit," only the first of the three pieces of evidence cited by the government is relevant in determining whether Rothe had standing to bring this suit. Lujan, 504 U.S. at 570 n.5; Friends of the Earth, 528 U.S. at 189-93 (discussing differences between standing and mootness); Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309 (Fed. Cir. 2003); Becker v. Fed. Election Comm'n, 230 F.3d 381, 386 n.3 (1st Cir. 2000) (collecting cases and holding that "while it is true that a plaintiff must have a personal interest at stake throughout the litigation of a case, such interest is to be assessed under the rubric of standing at the commencement of the case, and under the rubric of mootness thereafter"). But see Powder River Basin Res. Council v. Babbitt, 54 F.3d 1477 (10th Cir. 1995) (considering post-complaint events in examining a plaintiff's standing).

At the time Rothe filed suit, the price-evaluation adjustment was in full force. The mere passage of the mechanism by which the suspension could be implemented does not demonstrate that Rothe's claimed injury was so "conjectural or hypothetical" that it lacked standing. Accordingly, we reject the government's standing argument.

**3**

The last jurisdictional argument raised by the government against Rothe's facial unconstitutionality claim is based on ripeness grounds. "A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical. . . . A case is generally

ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." Monk v. Huston, 340 F.3d 279, 282 (5th Cir. 2003) (internal quotations omitted); Maritrans, Inc. v. United States, 342 F.3d 1344, 1359 (Fed. Cir. 2003) (citing Abbott Laboratories v. Gardner, 387 U.S. 136 (1967)). Once again, the government bases its ripeness contention on the same evidence it offers for mootness and standing -- "The PEA program is suspended, has been for many years, shows no sign of reactivation, and Section 1207 is slated to terminate in 2006."

The government's argument is misplaced because the issue whether section 1207, as reauthorized in 2002, is facially unconstitutional is a purely legal issue that is neither abstract nor hypothetical. Indeed, as we held in Rothe's prior appeal, the analysis of the facial constitutionality of an act is limited to evidence before Congress prior to the date of reauthorization. Rothe III, 262 F.3d at 1327-28. Thus, we reject the government's ripeness argument.

**D**

In sum, the district court improperly held the damages claim to be moot but properly held the equitable-award-of-the-contract claim to be moot. Further, the district court properly held that jurisdiction lies as to Rothe's claim that the present reauthorization of section 1207 is facially unconstitutional.

**III**

**A**

On the merits, Rothe contends that the district court's findings and legal analysis do not support a holding that the present reauthorization of section 1207 is facially constitutional. Surprisingly, the government agrees.

The government argues, however, that remand is required to develop the record so that legally sufficient findings can be made and required analysis can be conducted. The government's argument is based on the procedural history of this case on remand after Rothe III, in which we stated:

> We remand for a determination of the constitutionality of the 1207 program under a strict scrutiny standard . . . . The constitutionality of the 1207 program must be assessed as reauthorized in 1992, as applied to Rothe's bid in 1998, and at present, to the extent that declaratory or injunctive relief is still sought.

262 F.3d at 1329.

Despite our clear guidance that the issues on remand were to include an analysis of section 1207 "at present," the district court, in a series of three discovery rulings, narrowed the issues on remand to exclude the evaluation of the present reauthorization of section 1207. In these rulings, the district court prohibited Rothe from obtaining certain discovery it considered relevant to the then-applicable reauthorization of section 1207 because, inter alia, such discovery was "not relevant to [sic] issue before this Court--that is, the evidence before Congress when the 1207 program was enacted and reauthorized in 1992." The final discovery order most clearly identifies the district court's restriction of the issues: "Plaintiff must understand by now that the issue before this Court is whether Congress had a compelling interest in 1992 when it reauthorized

the § 1207 program and whether or not that program was narrowly tailored to meet that interest." This final order also set a briefing schedule for dispositive motions and admonished the parties to "address all matters considered by the Federal Circuit in their opinion." Although Rothe disagreed with the district court's decision to limit the issues to exclude examination of the facial constitutionality of the present reauthorization of section 1207, Rothe understood the district court to have so limited the case. In a brief before the district court, Rothe stated: "Defendants' [sic] appear to agree with the Court that <u>the only evidence the Court would consider is that used in reauthorization of § 1207 in 1992</u>, notwithstanding Defendants' professed concern that this Court was not addressing the broader issues remanded by the Federal Circuit."

Despite its discovery orders, the district court concluded in its order addressing the parties' dispositive motions that the constitutionality of the present reauthorization of section 1207 actually was at issue after all. In the district court's words, "The Government argues that the law of the case limits this action to whether Congress had a compelling interest in 1992 when it reauthorized the National Defense Authorization Act of 1987 (the 'Act'). This Court, however, expressly ordered Defendant to consider the Federal Circuit's entire remand and as such, issues this Order in accordance with that remand." The district court then ruled in favor of the government, holding the present reauthorization of section 1207 to be constitutional.

Because the government had not moved for summary judgment on this claim, the district court's ruling was a <u>sua</u> <u>sponte</u> grant of summary judgment in the government's favor. In <u>Celotex Corp. v. Catrett</u>, the Supreme Court held that "district courts are widely acknowledged to possess the power to enter summary judgments <u>sua</u>

sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." 447 U.S. 317, 326 (1986). Although the quotation from Celotex is directed to losing parties, similar problems of procedural unfairness can arise for winning parties, as can be seen from Rothe's argument on appeal. Rothe argues in this case that the insufficiency of the evidence presented by the government requires us to grant summary judgment in Rothe's favor, not merely to vacate and remand for further development of the record. If we were to agree with Rothe, however, the government would have been unfairly deprived of an opportunity to introduce its evidence and arguments by the district court's unwarned and sua sponte grant of summary judgment.

Because the district court's discovery orders clearly limited the issues to exclude the present reauthorization of section 1207, we hold that the government was not on notice that it was required to come forward with all of its evidence and, therefore, remand is required. The district court's vague requirement that the parties address all the matters considered by the Federal Circuit in its opinion did not specifically address the unconstitutionality of the present reauthorization of section 1207 and, therefore, was insufficient to overcome the clear language of the three discovery rulings that the present reauthorization would not be considered.

Despite ultimately concluding that remand is required, we recognize several factors that weigh against remand. Our mandate in Rothe III to consider the present reauthorization of section 1207 was quite clear. 262 F.3d at 1329. Further, even though the district court's narrowing of the issues favored the government's litigation position, we find it troubling that the government appears to have argued in favor of the very narrowing that it now claims to be erroneous. Additionally, the government's claim

that it was prevented from introducing evidence is weakened by its failure to cite in its appellate briefing to any specific evidence it would have introduced had it been provided the opportunity. Since that evidence necessarily is published, for example, in Congressional Committee reports and hearing records, it could easily have been cited. Finally, because the issue whether the present reauthorization would be addressed was clearly disputed, both parties would have been well-served to request clarification from the district court before submitting their summary judgment motions.

In the end, we conclude that the matter must be remanded to allow both sides a fair opportunity to obtain and present Congressional evidence and arguments on the facial constitutionality of the present reauthorization of section 1207.[4]

**B**

In a scattered approach, Rothe raises a number of specific factual and legal contentions, of which we address only three. First, the parties dispute whether it was appropriate for the district court to apply United States v. Salerno, 481 U.S. 739 (1987). The language at issue from Salerno is the statement that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." Id. at 745. Rothe objects to reliance on Salerno and is correct in pointing out that this language has been criticized in several subsequent Supreme Court cases. See, e.g., City of Chicago v. Morales, 527 U.S. 41, 55 n.22 (1999) (Stevens, J., with

---

[4]    We note that our holding requires only that an opportunity to take discovery on the facial unconstitutionality of the present reauthorization of section 1207 be provided but does not dictate that any specific discovery be allowed or prohibited, including the discovery addressed in the district court's January 27, June 10, and September 26, 2003, orders.

Souter and Ginsburg, JJ.). The government is also correct, however, in noting that the Salerno language has not been expressly disapproved by the Supreme Court and continues to be quoted in recent cases, at least in the courts of appeals. See, e.g., United States v. Robinson, 367 F.3d 278, 290 (5th Cir. 2004).

The dispute whether it was appropriate for the district court to apply a Salerno-type analysis in this case is irrelevant, however, because the district court, in fact, did not apply such an analysis. Although the district court quoted Salerno and held that it has continued vitality, the district court did not identify one or more constitutionally valid applications of section 1207 as would be required under Salerno. Instead, the district court applied the doctrine of strict scrutiny. Because, as we held before and hold again today, the strict scrutiny doctrine sets forth the test for determining facial unconstitutionality in this case, Salerno is of limited relevance here, at most describing a conclusion that could result from the application of the strict scrutiny test. Salerno, 481 U.S. at 745; cf. Marc E. Isserles, Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement, 48 Am. U. L. Rev. 359, 397-408 (1998).

Second, Rothe makes a number of detailed legal and factual arguments related to several studies relied on by the district court, which the parties refer to as the Appendix, the Urban Institute study, and the Benchmark study. Rothe claims that these studies are inadmissible for a variety of reasons and should be given no weight, even if admitted. Rothe's most fundamental objection to this evidence, however, is that the district court did not show that this evidence was actually submitted to Congress by the time of the present reauthorization.

We agree with Rothe that noticeably absent from the district court's analysis are findings supported by evidence that the documents on which it relies were before Congress in relation to section 1207 prior to the date of the present reauthorization. In our prior decision, we held that evidence post-dating the enactment of a statute could not be counted in determining the facial constitutionality of the statute because "there is no difference in the evidentiary burden that must be faced during litigation (i.e., a 'strong basis in evidence') and the evidence that a legislature must have before it when it enacts a racial classification." Rothe III, 262 F.3d at 1326 (emphasis added). Thus, to be relevant in the strict scrutiny analysis, the evidence must be proven to have been before Congress prior to enactment of the racial classification. Although these statistical studies predate the present reauthorization of section 1207 in 2002, their relevance is unclear because it is uncertain whether they were ever before Congress in relation to section 1207. Without a finding that these studies were put before Congress prior to the date of the present reauthorization in relation to section 1207 and to ground its enactment, it was error for the district court to rely on the studies.

Third, Rothe disagrees with the district court's analysis as to the timeliness of the data in the record. The district court stated:

> While Rothe objects that all evidence proffered by the Government prior to 1990 is stale, the Court finds that Congress cannot be expected to work in a vacuum. This program was initially enacted in 1987. Congress must have some sense of an institutional memory and as the program was reauthorized and amended, it is only fair to assume that Congress relied in part on evidence previously developed.

Rothe IV, 324 F. Supp. 2d at 851 n.8.

The district court's reliance on Congress's institutional memory, at least in that portion of its opinion, is insufficient to reject Rothe's staleness argument. Because

staleness relates to whether the data itself is "outdated," the focus must be on the data, not on whether Congress was aware of the data. Rothe III, 262 F.3d at 1324. Thus, the district court should consider on remand whether the data presented is so outdated that it does not provide a strong basis in evidence for the most recent reauthorization of section 1207.

In sum, we hold that Salerno does not supply the test for determining facial unconstitutionality in this case, that the district court erred in relying on statistical studies without first determining whether these studies were before Congress in relation to section 1207 prior to the date of its present reauthorization, and that the district court should consider on remand whether the data at issue has become outdated.

## IV

We finally turn to Rothe's contention that the district court erred in denying its claim to attorney fees. The government argues, and we agree, that Rothe did not preserve this issue for appeal.

Under Fed. R. App. P. 28(a)(9)(A), the appellant's opening brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Under Fed. R. App. P. 32, the length of the opening brief is limited to 30 pages or 14,000 words.

Rothe claims that it preserved the attorney fees issue for appeal by summarizing its argument in its opening brief. Rothe's "summary," however, is limited to a single sentence that reads, in pertinent part, "The district court abused its discretion by . . . denying award of attorneys' fees and costs for having the 1992 reauthorization of § 1207 reauthorized." This sentence is immediately followed by a footnote containing

only the following citations: "A991-994; A995-1004; A1005-1012; A1013-1016," which refer to plaintiff's motion for attorney fees, plaintiff's memorandum of law in support of the motion, the district court order denying fees, and plaintiff's reply to the government's opposition to the motion for attorney fees, respectively. At oral argument, Rothe's counsel conceded that its "summary" was merely an incorporation of arguments by reference to the appendix and that he used incorporation to avoid the limitation on the length of the briefs.

In Graphic Controls Corp. v. Utah Medical Products, Inc., 149 F.3d 1382, 1385 (Fed. Cir. 1998), we held that an appellant cannot preserve an issue for appeal simply by incorporating arguments from the appendix. We reasoned that incorporation would undermine both the rule requiring appellants to include their arguments in their principal brief and the rule limiting the length of the briefs. Although Graphic Controls cites an earlier version of the Federal Rules of Appellate Procedure, its holding remains binding because the newer rules upon which we rely are materially indistinguishable from the rules cited in Graphic Controls. Accordingly, because Rothe merely incorporated arguments by reference, it did not preserve the attorney fees issue for appeal.

**V**

Accordingly, we hold as to jurisdiction that Rothe's damages claim was not mooted by the government's alleged tender, the claim to an equitable award of the 1998 contract is moot, and that jurisdiction over the claim that the present reauthorization of section 1207 is facially unconstitutional is proper. On the merits, we vacate the district court's judgment as to the damages claim and the present facial unconstitutionality

claim and remand for development of the record.  Finally, we hold that Rothe failed to preserve the attorney fees issue for appeal.

<u>AFFIRMED-IN-PART, VACATED-IN-PART, and REMANDED</u>