NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-7193

THE VETERANS LAW GROUP,
(and similarly situated petitioners),

Petitioners,

v.

SECRETARY OF VETERANS AFFAIRS,

Respondent.

_____

DECIDED:  July 13, 2006

_____

Before MICHEL, <u>Chief Judge</u>, NEWMAN and MAYER, <u>Circuit Judges</u>.

MICHEL, <u>Chief Judge</u>.

The Veterans Law Group ("VLG") petitions for judicial review of a letter issued by

the Veterans Benefits Administration ("VBA") of the Department of Veterans Affairs

("DVA") on June 14, 2005, VBA Letter 20-05-35 ("Letter").  VLG asserts that the Letter

constitutes a "rule or regulation" of the DVA within the meaning of 38 U.S.C. § 502,

which grants this court jurisdiction to review DVA regulations.  VLG contends that as a

putative regulation, the Letter was void because it had not been subjected to public

notice and comment under 5 U.S.C. § 553 before its issuance and that because of its

content and alleged purpose to impede grants of benefits, it violated due process.  VLG

asks us to invalidate the Letter and block issuance of a successor letter. The Secretary of Veterans Affairs responds that the issue raised in this petition is moot as the Letter was withdrawn or is not ripe as no successor letter ever issued and, in any event, that VLG lacks standing to bring this petition because no client was affected. Because we hold that this petition for review properly raises only an issue that is moot, we dismiss. Because we dismiss for mootness, we need not and do not address ripeness or standing.

I.

In December 2004, the Chicago Sun-Times published an article regarding alleged disparate treatment of Illinois veterans by the DVA, in particular that Illinois veterans received disability benefits in fewer cases than veterans in other states. The DVA then conducted a study of awards of benefits to veterans in different states, releasing a May 2005 report entitled "Review of State Variances in VA Disability Compensation Benefits." The report suggested that veterans in other states were too often receiving benefits, not that Illinois veterans were too seldom receiving benefits. The report focused on benefits for three service-connected disability categories: (1) post-traumatic stress disorder ("PTSD"), (2) 100 percent disability, and (3) total disability awards based on individual unemployability ("IU").

In response to this report, on June 14, 2005, the VBA issued Letter 20-05-35 to address this problem. This Letter instructed that grants, but not denials, of benefits for PTSD, 100 percent disability, and total disability awards based on IU require a "concurring second signature" from a "decision maker of equal or greater authority" "to serve as a check against inaccurate ratings and unacceptable variation in judgment."

The stated purpose of this second signature requirement was to ensure that: (1) "all applicable statutes, regulations, and procedures have been followed," (2) "the decision is properly supported by the facts of record," and (3) "the decision itself is adequately explained."

Lane Evans, Ranking (Democratic) Member of the Committee on Veterans' Affairs of the United States House of Representatives, wrote to the Secretary of the DVA on June 21, 2005, stating that this requirement was unfair because claims for PTSD that are <u>denied</u> should equally require a second signature to ensure that these veterans are not being unfairly denied. Evans' letter only addressed denials for PTSD.

On July 20, 2005, the Secretary wrote Representative Evans that the Letter had been withdrawn on June 20, six days after its issuance. His letter also said that the VBA "intend[s]" in the near future to issue another letter in which a second signature for the same three grants discussed above would also be required <u>and</u> in which a second signature for the <u>denial</u> of benefits for PTSD would be required. Such a letter, however, was never issued.

On August 24, 2005, and September 7, 2005, VLG wrote to Renee Szybala, Director of Compensation and Pension Services for the VBA, to inquire whether VBA Letter 20-05-35 had been withdrawn from all Regional Offices. Szybala responded via e-mail that it had been.

On September 20, 2005, VLG[1] petitioned this Court for judicial review of this Letter and requested that we hold that: (1) the Letter was void because, prior to

---

[1] According to its web site and its brief, The Veterans Law Group is a law firm. The web site states that The Veterans Law Group is "[a] group of lawyers

issuance, it was not subject to public notice and comment procedures as required, and (2) the Letter, due to its contents, violated due process.

## II.

VLG argues that "voluntary cessation" of the policy stated by the Letter does not moot this petition because the VBA could reinstitute the second signature policy at any time, such that VLG's objections to these policies would then become "recurring claims evading review." Furthermore, VLG asserts that the changes in a future second signature policy as outlined in the letter to Representative Evans would only ameliorate, but not eliminate, the problem because it only provides for second signatures for denial of PTSD benefits, but not for denials of 100% disability or 100% IU. VLG therefore contends that, because all objectionable aspects of the second signature policy would not be removed in an expected new letter, this petition is not moot. The government responds that the petition is indeed moot because the Letter was withdrawn and because there is "no reasonable expectation" that the second signature policy in its form in the Letter will ever be reinstituted.

## A.

"A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it." St. Pierre v. United States, 319 U.S. 41, 42 (1943). "[A] case is moot when the issues presented are no longer 'live,." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979). However, "as a general rule, 'voluntary cessation of allegedly illegal conduct does not deprive the

dedicated to securing benefits for disabled Veterans and their dependents." The Veterans Law Group, http://www.veteranslaw.com (last visited May 8, 2006). Similarly, its Petition for Review states that "[p]etitioners are a law firm. . . ."

05-7193                                           4

tribunal of power to hear and determine the case, i.e., does not make the case moot.'" Id. On the other hand, jurisdiction "may abate if the case becomes moot because . . . it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur." Id. (citations omitted).

The government maintains that the Secretary's July 20, 2005 letter to Representative Evans stating that the "Under Secretary therefore withdrew his directive on June 20" and informing Evans that "[w]e intend to issue a new directive in the near future that requires a concurring second signature on the following cases," including the three grants discussed above, but only "denials of service connection" for PTSD shows there is no reasonable expectation that the second signature requirement of the June 14, 2005 Letter will be reinstated. (Emphasis added.) We agree. While VLG argues that the VBA merely "purports" to withdraw the June 14, 2005 Letter, it fails to argue, much less prove, that there is a reasonable expectation of recurrence of the second signature requirement of the VBA June 14, 2005 Letter. Indeed, VLG agrees the Secretary's Letter is dispositive.

B.

The most relevant case cited by VLG on this point is Davis. In Davis, Davis alleged that a written civil service examination used since 1969 was racially discriminatory. In 1971, the County of Los Angeles replaced that test with one specifically devised and conceded not to be racially discriminatory. Suit challenging the old examination was not filed until 1977. The Supreme Court held that the case was moot because the original testing was "unlikely to recur," given that: (1) the written examination objected to was no longer used, and (2) the county instituted a new test

and method of screening applicants that was not challenged. Here, the June 14, 2005 second signature requirement was withdrawn in less than one week. A new second signature requirement has not been instituted to replace the June 14, 2005 one. A new letter was predicted that addresses the concerns of Congress, as stated in Secretary Nicholson's letter. Davis deals with ongoing conduct that was allegedly unconstitutional. This petition deals with a single act – issuance of the Letter which was withdrawn before any conduct occurred. Even assuming Davis applies here, its requirements are met. Thus, we can reasonably conclude by analogy to Davis that the same second signature requirement will not likely recur.

On reply, VLG states that the "revisions set forth in the Secretary's correspondence [to Evans] are a reliable, if not compelling, indication of what to expect in the near future." Yet this misses the point. The reasonable expectation test in voluntary cessation cases asks whether there is a reasonable expectation that the harm from the policy at issue – not from a hypothetical future policy – will recur. "The case has therefore lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." Hall v. Beals, 396 U.S. 45, 48 (1969).

## C.

The government also states that our review of a proposed new Letter is not ripe because a new directive with a different second signature requirement has not issued and may not issue. VLG does not reply to the ripeness argument. In replying to the mootness argument, VLG can charitably be deemed, in effect, to reply to the ripeness argument by countering that the content of a possible future second signature directive

05-7193                                6

is known because the Secretary stated in his letter to Evans that it "intend[ed]" to issue a new second signature directive that included a second signature requirement for denials of PTSD, as requested by Evans in Evans' letter to the VBA. We agree that our review of a hypothetical second Letter is not ripe.

"A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical. . . . A case is ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." Rothe, 413 F.3d at 1335. A possible future second signature requirement of unknown content – even if that content is anticipated or suggested – is hypothetical. Indeed, the very issuance of such a directive is hypothetical. Moreover, as the government points out, "the issues raised by [VLG] . . . may very well be addressed in such a future circular, thereby negating any need for a challenge." Thus, the issue of a possible future second signature requirement is not ripe.

### III.

Because the Letter was withdrawn six days after its issuance, no replacement letter has issued in the intervening year, and no second signature policy of any kind has been applied to any veteran, there is no evidence whatsoever indicating that there is a reasonable expectation of recurrence of the conduct ordered by the withdrawn Letter. Therefore, this petition is dismissed as moot. We further decline to opine on a hypothetical future letter for lack of ripeness.