# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-3083

CARMEN J. CARDONA, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before KASOLD, *Chief Judge*, and DAVIS and BARTLEY, *Judges.*

## O R D E R

The appellant appeals through counsel an August 30, 2011, Board of Veterans' Appeal (Board) decision that denied additional compensation for a dependent spouse under 38 U.S.C. § 1115 (Additional compensation for dependents). The Board denied the claim because the appellant's spouse under Connecticut law – who is of the same sex as appellant – is not a spouse for purposes of VA benefits. *See* 38 U.S.C. § 101(31) ("The term 'spouse' means a person of the opposite sex who is a wife or husband.").

On appeal, the appellant challenged section 101(31) and section 3 of the Defense of Marriage Act (DOMA), 1 U.S.C. § 7 (defining "spouse" for purposes of Federal law as a "person of the opposite sex who is a husband or a wife"), as unconstitutional. In accord with the view of the President and the Attorney General of the United States, the Secretary argued that these statutes were unconstitutional, but continued to enforce them pending congressional repeal or judicial decision. *See* Secretary's May 9, 2012, Notice to the Court (2012 Notice). The Bipartisan Legal Advisory Group of the U.S. House of Representatives (House) intervened to defend the constitutionality of these statutes. Because the constitutional challenges presented an issue of first impression, the appeal was assigned for panel review. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).

## I. BACKGROUND AND JURISDICTION

This appeal was stayed pending a decision by the Supreme Court of the United States (Supreme Court) on the constitutionality of section 3 of DOMA. On June 26, 2013, in *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013), the Supreme Court held that section 3 of DOMA violated the Fifth Amendment by denying the equal protection of Federal law to "those persons who are joined in same-sex marriages made lawful by the State[s]." On August 7, 2013, the House withdrew from this case. On September 9, 2013, the Secretary informed the Court that the President (through the Attorney General) had directed the Executive Branch to cease enforcing section 101(31) to the extent that section limited the provision of veterans benefits to married couples of the opposite sex. *See* Secretary's September 9, 2013, Notice to the Court (attaching the

Attorney General's September 4, 2013, Letter to the Honorable John A. Boehner, Speaker of the U.S. House of Representatives (AG Letter)). The Attorney General's letter conveying the President's directive noted that the title 38 provision is "substantively identical" to section 3 of DOMA, that "[t]he decision of the Supreme Court in *Windsor* reinforces the Executive's conclusion that the Title 38 provisions are unconstitutional, and another Article III court now has so determined." *Id.* at 2.[1]

Pursuant to the President's directive, on October 4, 2013, the Secretary filed a motion to vacate the Board decision on appeal and remand the matter to award the appellant her spousal benefits. The appellant, however, opposed that motion and argued that the Court should adjudicate her constitutional challenge to section 101(31). Following two Court orders requesting clarification of the Secretary's position on payment, the Secretary informed the Court on October 29, 2013, that he had initiated the processing of payment on appellant's claim.

On November 22, 2013, the Secretary filed a motion to dismiss in which he (1) informed the Court that full spousal benefits (including those past due) had been paid by the Secretary and received by the appellant and (2) asserted that the case or controversy before the Court was now moot. The appellant opposes this motion, contending that the voluntary cessation exception to the mootness doctrine applies to her case. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982))).

Although not an Article III court, this Court has adopted the case-or-controversy requirement as a basis for exercising our exclusive jurisdiction in the veterans benefits arena, *see* 38 U.S.C. § 7252, including the requirement that a case be dismissed when it becomes moot during the course of the appeal. *See Bond v. Shinseki*, 2 Vet.App. 376, 377 (1992) ("[W]hen a once live case or controversy becomes moot, the Court lacks jurisdiction . . . [and the] case [is] dismissed."); *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990) (adopting "the jurisdictional restrictions of the Article III case or controversy rubric," finding that a petition is moot, and holding that "the Court no longer has jurisdiction and the petition is dismissed"); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975))).

It also is well settled that, when benefits on a claim have been paid, a case generally is moot. *See Padgett v. Peake*, 22 Vet.App. 159, 164 (2008) (en banc) (appellant's claim is moot where she "is now in actual receipt of th[e requested] benefits"); *Donovan v. West*, 13 Vet.App. 489, 490 (2000) (en banc) (appellant's claim is moot where there was no dispute that "action to recover any debt owed

---

[1] The title 38 provisions referenced are sections 101(31) and 101(3) (defining "surviving spouse" as "a person of the opposite sex who was the spouse"), and the Article III court referenced is the U.S. District Court for the Central District of California, which held on August 29, 2013, that sections 101(31) and 101(3) were not rationally related to a legitimate governmental interest. *See Cooper-Harris v. United States*, __ F. Supp. 2d __, No. 2:12-00887-CBM (AJWx), 2013 WL 4607436 (C.D. Cal. Aug. 29, 2013).

in this matter was stopped . . . and money that had been collected by offset was refunded"); *MacWhorter v. Derwinski*, 3 Vet. App. 223, 223 (1992) (appellant's claim is moot where appellant's benefits have been awarded); *see also Windsor*, 133 S. Ct. at 2686 ("Windsor's ongoing claim for funds that the United States refuses to pay thus establishes a controversy sufficient for Article III jurisdiction. It would be a different case if the Executive had taken the further step of paying Windsor the refund to which she was entitled under the District Court's ruling."); *id.* at 2702 (Scalia, J., dissenting) (if the President chose "neither to enforce nor to defend the statute he believed to be unconstitutional . . . , Windsor would not have been injured [and] the District Court [would have lacked jurisdiction]"); *Blue v. Hartford Life*, 698 F.3d 587, 597 (7th Cir. 2012) ("[A] benefit claim becomes moot when it is paid in full and a plaintiff is granted all the relief he seeks.").

Upon review of the parties' written and oral arguments, and for the reasons stated below, we find that this matter is moot and the appeal will be dismissed.

## II. ARGUMENTS

The Secretary argues that payment of the appellant's spousal benefits moots this case. He specifically notes that the claim for spousal benefits denied by the Board has since been awarded, which ends the case or controversy. *See Padgett*, *MacWhorter*, *Bond*, and *Mokal*, all *supra*. The Secretary contends that this Court has never found the actual payment of benefits insufficient to moot a case, even where it is possible that benefits could be discontinued at some later time. *See Padgett*, 22 Vet.App. at 165 ("[T]he possibility that the Secretary might try to revoke his decision awarding Ms. Padgett accrued benefits in the future does not, without more, create an Article III case or controversy."). If such a possibility did occur, he contends, such an action would not be a recurrence of *this* case (regarding the Board's *initial* denial of spousal benefits), but would be a reduction or discontinuance case – a distinct action with its own set of procedures and due process requirements. *See* 38 C.F.R. §§ 3.105, 3.114(b) (2013).

The Secretary further notes that the purpose underlying the voluntary cessation exception is to prevent parties from manipulating judicial review, *see Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013), and he contends that there is no indication that his cessation of enforcing section 101(31) against the appellant was in bad faith or designed to evade judicial review. Rather, he states, the cessation was pursuant to the presidential directive that (1) binds the Secretary and (2) was a genuine and deliberate decision by the President and the Attorney General, based primarily on the *Windsor* decision.

The appellant does not dispute that she has now received her full payment of spousal benefits. Rather, she argues that, under the voluntary cessation exception to the mootness doctrine, the Secretary has the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190. She alleges that the Secretary cannot meet his burden because this or a future administration could simply resume enforcement of section 101(31), which remains part of title 38, and the Secretary could act to discontinue her spousal benefits. In support of this argument, she cites Federal appellate court

decisions holding that agencies' changes in policy were insufficient to find mootness, and one historic example in which President Carter's Attorney General ceased defending a particular statute and President Reagan's Attorney General subsequently reversed course. *See infra* pp. 9-11 & notes 6-8 (discussing the cited decisions and historic example of Attorney General reversal).

The appellant also argues that the "public interest in having the legality of the practices settled[ ] militates against a mootness conclusion." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). She specifically notes that two U.S. district courts have reached the merits of the constitutionality of section 101(31), but that it would violate congressional intent to leave the adjudication of this important issue regarding veterans benefits to the district courts alone.[2]

## III. DISCUSSION

### A. Voluntary Cessation Exception

As argued by the appellant, an exception exists to the mootness doctrine when the mootness is based on a party's voluntary cessation of the challenged conduct. *See Friends of the Earth*, 528 U.S. at 190 (noting that the mootness doctrine differs from standing in that it permits exceptions). This voluntary cessation exception is based on the concern that a party voluntarily ceasing its conduct might be attempting to manipulate court proceedings and evade judicial review. *See Already,* 133 S. Ct. at 727 (concern underlying voluntary cessation doctrine is that "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends"); *W.T. Grant*, 345 U.S. at 632 (noting concern that mootness dismissal will leave defendant "free to return to his old ways"). In furtherance of this concern, the voluntary cessation exception compels the defendant to show that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190.

### 1. U.S. Supreme Court Caselaw

Although the appellant relies heavily on the plain language of the voluntary cessation standard, a proper understanding of this standard requires an examination of its application by the Supreme Court in various contexts. *Friends of the Earth*, for example, involved a private company that, following a citizen's suit, purported to comply with its National Pollutant Discharge Elimination System (NPDES) permit requirements, and subsequently closed the facility at issue. 528 U.S. at 193.

---

[2] *See Cooper-Harris*, *supra* note 1; *see also McLaughlin v. Hagel*, No. 1:11-11905-RGS (D. Mass. Oct. 2, 2013). Because reaching the merits of this case when the appellant's claim already has been granted would amount to rendering an advisory opinion, as we note *infra* pp. 11-12, we need not address the appellant's Congressional intent argument, other than to note that the legislative history of the Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988), does reflect a preference toward one court uniformly deciding the law on veterans benefits issues. *See* H.R. Rep. No. 100-963, at 28 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5810 ("The committee believes that it is strongly desirable to avoid the possible disruption of VA benefit administration which could arise from conflicting opinions on the same subject due to the availability of review in the 12 Federal Circuits or the 94 Federal Districts.").

Although the U.S. Court of Appeals for the Fourth Circuit (Fourth Circuit) found the case moot, the Supreme Court explained that the Fourth Circuit had conflated the law regarding standing and mootness. *Id.* at 190. The Court then remanded the case, noting that the effect of the company's purported compliance as well as the facility closure was a "disputed factual matter," because, "for example," it appeared that the company still retained its NPDES permit. *Id.* at 193. Justice Stevens further noted in his concurrence that "even if it were absolutely clear that respondent had gone out of business and posed no threat of future permit violations," the issue of civil penalties for the company's previous violations remained a live controversy. *Id.* at 196 (Stevens, J., concurring) (noting that the Federal appellate courts other than the Fourth Circuit have uniformly concluded that a cessation mooting the relief of an injunction "will not moot a citizen-suit claim for civil penalties").

The Supreme Court addressed a similar situation in *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000), which also involved a private business that ceased operation following suit. The Supreme Court noted that Pap's "is still incorporated under Pennsylvania law, and it could again decide to operate [its] establishment in Erie"; and further noted that "the 'advanced age' of Pap's owner (72) does not make it 'absolutely clear' that a life of quiet retirement is his only reasonable expectation." *Id.* at 287, 288. Significantly, however, the Court found that Pap's, which had prevailed below, "only raised the [mootness] issue after this Court granted certiorari," and that the Court's "interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review further counsels against a finding of mootness here." *Id.* at 288. Also of importance, the Court noted that the lower court's decision prevented the city from enforcing its ordinance, which is an ongoing injury to the city that "is sufficient to prevent the case from being moot." *Id.*

Shortly thereafter, *City of Erie* was clarified in *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 282 (2001), where a business – following its appeal of the city's refusal to renew its adult business license—withdrew its application for renewal and closed its business. Faced with the argument that *City of Erie* stood for the proposition that the possibility an entity could decide to operate again in the future was sufficient to preclude a finding that the case was moot, the Supreme Court noted that "speculation standing alone . . . did not shield [*City of Erie*] from a mootness determination. Another factor figured prominently." *Id*. at 283. Specifically, the city's ongoing injury from the lower court's decision. The Court further noted that—unlike *City of Erie* —the instant case lacked the arguable attempt to manipulate the Court's jurisdiction. *Id*. at 283-84. Stating that "a live controversy is not maintained by speculation [regarding] reentering a business that City News has left and currently asserts no plan to reenter," the Court ultimately dismissed the writ of certiorari. *Id.* at 285.

Two earlier Supreme Court decisions involving cessations by government actors are particularly relevant here. In *Los Angeles County v. Davis*, 440 U.S. 625, 629 (1979), a class action suit was brought to enjoin Los Angeles County from using an unvalidated civil service examination to rank job applications. The Supreme Court noted, however, that Los Angeles County had ceased using the examination in 1969, and contemplated employing it again in 1972 only because of a temporary emergency shortage of firefighters. *Id.* at 632. The Court found that "[t]hose conditions

were unique, are no longer present, and are unlikely to recur because, since the commencement of this litigation, petitioners have succeeded in instituting an efficient and nonrandom method of screening job applicants . . . ." *Id.* Further noting that "[t]here has been no suggestion by any of the parties, nor is there any reason to believe, that petitioners would significantly alter their present hiring practices if the injunction were dissolved," the Court held that the county had met its burden to show no reasonable expectation of recurrence. *Id.*

On the other hand, in *City of Mesquite*, following a lower court determination that an ordinance was unconstitutionally vague, the city removed the challenged language. 455 U.S. at 288. The Supreme Court refrained from finding the case moot, however, because "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated . . . . *Indeed, the city has announced just such an intention* [at oral argument]." *Id.* at 289 & n.11 (emphasis added). The Court also noted that the city had provided the respondent with an exemption to an age restriction, only to eliminate that exemption following a State court judgment, and stated that "[t]here is no certainty that a similar course would not be pursued if its most recent amendment were effective to defeat federal jurisdiction." *Id.* at 289.

This review of Supreme Court precedent reflects a number of clear principles: (1) Mere speculation regarding the possibility of recurrence will not suffice to avoid a mootness determination, *City News*, 531 U.S. at 285; (2) indications of an intent to revert to the challenged conduct, to insulate a favorable decision from review, or to manipulate court proceedings counsel against a finding of mootness, *City of Erie*, 529 U.S. at 288; *City of Mesquite*, 455 U.S. 289 & n.11; (3) a discernible change in the underlying circumstances bringing about the cessation and no indication that the cessation will be altered after a court dismissal weigh in favor of mootness, *Los Angeles County*, 440 U.S. at 632; and (4) a case is not moot if there remain ongoing injuries or issues, *City of Erie*, 529 U.S. at 288; *Friends of the Earth*, 528 U.S. at 193; *id.* at 196 (Stevens, J., concurring).

*2. Federal Appellate Court Caselaw*

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has provided additional guidance on the voluntary cessation exception. In *Military Order of the Purple Heart of the USA v. Secretary of Veterans Affairs*, 580 F.3d 1293, 1295 (Fed. Cir. 2009), for example, the Secretary argued that the withdrawal of Fast Letter 07-19 mooted the case. Noting that Fast Letter 07-19 had been replaced with a subsequent fast letter that instituted the same policy, however, the Federal Circuit found that "there has been no cessation of the challenged conduct, [and] the appeal is not mooted." *Id.* at 1296.

The Federal Circuit's decision in *Rothe Development Corp. v. Department of Defense*, 413 F.3d 1327 (Fed. Cir. 2005), is also instructive. Although the government asserted that the price-evaluation adjustment at issue had been suspended since October 1998, the Federal Circuit noted that "the continued viability of the suspension depends on the continued fulfillment of [a] five percent goal," and that the government had acknowledged a steady trend in recent years that put continual

6

fulfillment of that goal in doubt. *Id.* at 1333. The court ultimately held that the government had provided "insufficient evidence that its allegedly offending conduct will not recur because it has not demonstrated that the five percent goal will continue to be met." *Id.* at 1334.

In other decisions, the Federal Circuit has acknowledged that government officials are presumed to carry out corrective actions in good faith. *See Chapman Law Firm Co. v. Greenleaf Const. Co.*, 490 F.3d 934, 940 (Fed. Cir. 2007) (finding that, despite the voluntary cessation exception, where the U.S. Court of Federal Claims found a corrective action reasonable, it was "required to assume that the Government would carry out the corrective action in good faith" and to dismiss the case for lack of controversy); *see also Heartland By-Products, Inc. v. United States*, 568 F.3d 1360, 1368 (Fed. Cir. 2009) (finding the case moot where, inter alia, the government admitted that its initial levy was contrary to its policy and Federal Circuit found "no reason to doubt the government's representation that it will not seek to recover unpaid duties"). This presumption of good faith when government officials voluntarily cease conduct or change policy is, in fact, the "prevailing norm" throughout the Federal appellate courts that have addressed the issue. *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) (quoting *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988) for the proposition that "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties," and noting in support of *Ragsdale* decisions of the U.S. Courts of Appeals for the Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits).[3]

Although some courts have gone a step further than the presumption of good faith and shifted the *Friends of the Earth* burden in the governmental context, *see Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1283 (11th Cir. 2004) ("[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur." (emphasis in original)), the Federal Circuit has not adopted that practice. *See Rothe*, 413 F.3d at 1333 (finding *Troiano* "not bind[ing]" and "materially distinguishable" from the case at hand). But the presumption of good faith, as it generally is understood, does ease the government's burden to show that its challenged conduct cannot reasonably be expected to recur. *Compare Sossamon*, 560 F.3d at 325 (noting that the presumption of good faith is "reconcilable with [*Friends of the Earth*]" and creates a "lighter burden" to demonstrate no reasonable expectation of recurrence), *and Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010) ("In practice, [*Friends of the Earth*'s] heavy burden frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case."), *with Bell v. City of Boise*, 709 F.3d 890, 900 n.13 (9th Cir. 2013) ("Although we presume a government entity is acting in good faith when it changes its policy, the government entity still must meet its heavy burden of proof."

---

[3] The basis for this norm is the presumption that government officials—as public servants and not self-interested private parties—are acting in good faith when they cease a certain conduct or make a formally announced change in policy, such that it is not reasonable to expect a return to the previous conduct. *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing.").

(citations omitted)).[4]

As to Federal appellate court decisions with particular relevance to the issue herein, *Ragsdale* and *Christian Coalition of Alabama v. Cole*, 355 F.3d 1288 (11th Cir. 2004), both involve the government ceasing conduct and changing policy based on recently issued Supreme Court decisions. In *Ragsdale*, Illinois officials asserted that since 1983 they had not enforced an existing State statutory requirement that all second trimester abortions be performed in a hospital, when the Supreme Court issued decisions[5] that the officials read as confirming the unconstitutionality of such a requirement. 841 F.2d at 1363-64. The U.S. Court of Appeals for the Seventh Circuit (Seventh Circuit) found the nonenforcement genuine, "particularly in view of the reasons therefor," and concluded that the plaintiffs' challenge to the aforementioned requirement was moot. *Id.* at 1365. *Ragsdale* directly addresses an issue of particular concern to the appellant here–that the continued existence of the statute poses a risk that a future administration could decide to enforce the offending provision. In response to "plaintiffs' concern that the State had not acted to remove or amend the statute," the *Ragsdale* court observed there was no authority by which it could require the legislature to do so and that, notwithstanding the continued existence of the offending statute, "Federal courts do not, as a rule, enjoin conduct which has been discontinued with no real prospect that it will be repeated." *Id.* at 1367. In *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485 (7th Cir. 2004), the Seventh Circuit confirmed *Ragsdale*'s holding that "a case is moot when a state agency acknowledges that it will not enforce a statute because it is plainly unconstitutional, in spite of the failure of the legislature to remove the statute from the books." *Id.* at 492. Crediting the State agency's "private and public assurances, evidenced by [a] letter and website disclaimer, that the statute will not be enforced in the future," the court determined that "there is no behavior to enjoin" and, hence, the case was moot. *Id.* at 491.

Similarly, in *Christian Coalition of Alabama*, 355 F.3d at 1290, the Alabama Judicial Inquiry Commission (JIC) withdrew an advisory opinion, which was the subject of the underlying lawsuit, one month after and "in light of the decision of the United States Supreme Court in [*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002)]." The U.S. Court of Appeals for the Eleventh Circuit noted that the withdrawal was "not made so as to merely avoid a ruling by the federal court," but was genuine and based on the fact that *White* "changed the legal landscape on which the JIC initially based its Advisory Opinion." 355 F.3d at 1292. Accordingly, "[the plaintiffs] can

---

[4] One instructive example of the application of the presumption is *American Cargo Transport*, which initially involved a conflict in the interpretation of law between two executive agencies until the U.S. Department of Justice announced during litigation its "new permanent . . . policy," favorable to the appellant, in summary judgment papers. 625 F.3d at 1180. The U.S. Court of Appeals for the Ninth Circuit found the case mooted because the circumstances reflected that the policy change was made in good faith, was not a transitory litigation posture, and therefore the interpretation that was initially challenged could not reasonably be expected to recur. *See id.* at 1179-80 ("The government was faced with conflicting agency interpretations and resolved the interpretive dispute . . . . [T]here is no basis to suggest it is a transitory litigation posture . . . . Of course there is always the possibility of bad faith and a change of heart. But, unlike in the case of a private party, we presume the government is acting in good faith.").

[5] The decisions were *Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416 (1983); *Planned Parenthood Association, Inc. v. Ashcroft*, 462 U.S. 476 (1983); and *Simopoulos v. Virginia*, 462 U.S. 506 (1983).

8

reasonably expect that the JIC will not issue another opinion" similar to the withdrawn one. *Id.* at 1292-93.

The appellant cites additional Federal appellate court decisions, which, she contends, establish that changes in policy or interpretations of law are insufficient to demonstrate mootness when there is uncertainty about, or the possibility of, the change being reversed in the future. A number of these decisions do note the possibility of future reversion in support of a finding against mootness, but a careful examination reflects that "speculation standing alone" was not what "shield[ed] the[se] case[s] from a mootness determination." *City News*, 581 U.S. at 283. First, in a number of the decisions cited, the changes of policy or interpretation did not fully resolve all issues associated with the case, such that the cases were not truly moot.[6] In another set of cited decisions, the government officials provided insufficient evidence of actual change, such that doubts remained as to whether the cases would not recur.[7] Finally, in other cited decisions, the circumstances surrounding the change reflected bad faith or a potential attempt to evade judicial review, such that there was distrust in any assertion that the challenged conduct would not recur.[8]

## B. Application

In the instant case, there is no dispute that the Secretary officially has changed his policy with regard to section 101(31) and the appellant's benefits. *See* AG Letter at 2 ("[C]ontinued enforcement of 38 U.S.C. §§ 101(3) and (31) is no longer appropriate, and the Executive Branch will no longer enforce them."). The circumstances underlying the Secretary's cessation confirm that the cessation does not appear to be a transitory litigation posture: (1) The cessation is based on the President's

---

[6] *See Purple Heart*, *supra*; *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003) ("[A]s plaintiffs could be entitled to money damages and the purging of their disciplinary records if the old version of the Rule were found to be unconstitutional . . . , the issue is not moot."); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) ("case is live" because "a court could order Sefick's sculpture displayed as a remedy"); *Layton v. Elder*, 143 F.3d 469, 471-72 (8th Cir. 1998) ("The steps taken by the county . . . have not addressed this problem [of inaccessibility]. Therefore, this appeal clearly cannot be considered moot."); *Phillips v. Pa. Higher Educ. Assistance Agency*, 657 F.2d 554, 569-70 (3d Cir. 1981) ("issue is not moot" where injunction and contractual dispute regarding attorneys' fees were still in dispute).

[7] *See CSI Aviation Servs., Inc. v. U.S. Dep't of Trans.*, 637 F.3d 408, 414 (D.C. Cir. 2011) (rejecting mootness argument because "promised rulemaking has yet to occur and CSI's exemption is merely temporary"); *Seneca v. Arizona*, 345 F. App'x 226, 228 (9th Cir. 2009) ("merely fil[ing] an affidavit stating that the 'policy changed'" is insufficient to demonstrate mootness); *Rothe*, *supra* p.6; *Gates v. Cook*, 376 F.3d 323, 337 (5th Cir. 2004) (Department's "assertions that it intends to meet these standards do not suffice to moot the issue"); *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 574 (2d Cir. 2003) (mere testimony of changed interpretation is insufficient to demonstrate mootness); *N.Y. Pub. Interest Research Grp. v. Whitman,* 321 F.3d 316, 327 (2d Cir. 2003) (mere "letter of commitment" is insufficient to demonstrate mootness); *Am. Iron & Steel Inst. v. E.P.A.*, 115 F.3d 979, 1007 (D.C. Cir. 1997) (rejecting mootness argument because Agency's change, inter alia, "could be ignored by local EPA officials").

[8] *See Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 343 (6th Cir. 2007) (rejecting mootness argument where Michigan Attorney General showed a willingness to limit the scope of the Act only once suit was filed, and even then incorrectly defined abortion procedure); *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1246 (11th Cir. 1998) (case not moot where, inter alia, director again threatened application of a bonding requirement following district court's dismissal).

9

directive, an official document that binds the Secretary, *see* 38 U.S.C. § 301(a) ("The Department of Veterans Affairs is an executive department of the United States."); *see also In re Aiken Cnty.*, 725 F.3d 255, 261 (D.C. Cir. 2013) ("[T]he President (and subordinate executive agencies supervised and directed by the President) may decline to follow [a] statutory mandate or prohibition if the President concludes that it is unconstitutional. Presidents routinely exercise this power through Presidential directives, executive orders, signing statements, and other forms of Presidential decisions."); (2) the President and Secretary have been consistent in their view of the unconstitutionality of section 101(31) from the outset of this litigation; (3) the President initially stated that he would continue to enforce the provisions pending congressional repeal or a judicial decision but declined to defend the provisions in court based on his view that they were unconstitutional, *see* 2012 Notice at 1-2; (4) following the Supreme Court's decision in *Windsor* that section 3 of DOMA was unconstitutional, and an Article III court's determination that section 101(31) was unconstitutional, the President officially ordered Executive agencies to cease enforcement because the title 38 provision violated the Fifth Amendment's Equal Protection guarantee, *see* AG Letter at 2; and (5) the Secretary has actually issued payments to the veteran. Accordingly, this is not a case where there is insufficient evidence of an actual policy change or lingering doubts as to whether relief will indeed be delivered. *Compare* cases cited at n.7.

Further, as the appellant admitted at oral argument, this is not a case where the circumstances surrounding the voluntary cessation reflect an attempt to evade judicial review or manipulate this Court's proceedings. *Compare City of Erie* and *City of Mesquite*, both *supra*. Rather, the circumstances reflect a genuine, good faith change in policy based on the discernible developments noted above—issuance of *Windsor*, a district court's decision that the title 38 provision is unconstitutional, and the President's directive that executive agencies not enforce the provision—which weigh heavily in favor of a finding that a reversion to the enforcement of section 101(31) is not reasonably likely. *See Los Angeles Cnty.*, *Chapman Law Firm Co.*, *Christian Coal. of Ala.*, *Sossamon*, *Am. Cargo Transp.*, and *Ragsdale*, all *supra*.

As to the appellant's argument that this or a future administration could resume enforcement of section 101(31) and attempt to discontinue her benefits, because the future is unknowable, we agree that resumption is possible. The instance in history when President Reagan's Attorney General reversed course from President Carter's reflects that a future administration may—despite all the aforementioned bases for the Secretary's cessation—take a different view and attempt to resume enforcement.

But the standard for voluntary cessation is whether recurrence "could . . . reasonably be expected," not whether recurrence is possible under a hypothetical future scenario. *Friends of the Earth*, 528 U.S. at 190; *see also Veterans Law Grp. v. Sec'y of Veterans Affairs*, 208 F. App'x 813, 816 (Fed. Cir. 2006) (nonprecedential) ("The reasonable expectation test in voluntary cessation cases asks whether there is a reasonable expectation that the harm from the policy at issue – not from a hypothetical future policy – will recur."). The Supreme Court was clear in *City News*, 531 U.S. at 285, that mere speculation regarding the possibility of recurrence will not be sufficient to avoid a

mootness determination.[9] *See also Preiser*, 422 U.S. at 402 (voluntary cessation exception requires more than "imagin[ing] circumstances in which he could be affected by the agency's action" (internal quotation marks omitted)); *W.T. Grant*, 345 U.S. at 633 (voluntary cessation exception requires "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive"). Moreover, the Court's en banc caselaw reflects this notion. *See Padgett*, 22 Vet.App. at 165 ("[T]he possibility that the Secretary might try to revoke his decision awarding Ms. Padgett accrued benefits in the future does not, without more, create an Article III case or controversy."). Thus, although the appellant faces the *possibility* that her spousal benefits could be discontinued at a later time, we find that, given the developments cited above, recurrence cannot reasonably be expected.

The appellant provides only speculation about what *could* happen. But there is no indication based on the Secretary's past and present actions that he will reverse course on this issue, or that a future Secretary will act counter to this President's directive and specifically attempt to discontinue the benefits of veterans in the appellant's position.[10] As noted above, the Federal appellate court decisions cited by the appellant regarding potential changes in administration or uncertainty about future conduct all involve other prominent factors–distrust of the intent behind the change, insufficient evidence of the change, or unresolved issues–that raised doubts as to whether the allegedly wrongful conduct would not recur. The circumstances here reflect nothing more than speculation that the enforcement of 38 U.S.C. § 101(31) would recur, which, given the course of events as to this issue, is insufficient to avoid a mootness determination under governing authority. *See City News* and *Padgett*, both *supra*.[11]

The appellant also notes that the public interest in having the legality of practices settled may militate against a finding of mootness. She is correct that public interest can be considered in conjunction with other factors, *see W.T. Grant*, 345 U.S. at 632 (concern that a defendant would be "free to return to his old ways . . . [,] together with a public interest in having the legality of the practices settled, militates against a mootness conclusion"), but she was unable to identify binding or persuasive authority where the public interest in settling the law alone (or the combination of public interest and mere speculation of recurrence) resulted in a finding against mootness. The lack of authority on this point is not surprising. As the U.S. Court of Appeals for the Sixth Circuit recently observed, "[a] stand-alone public interest exception to Article III has no meaningful pedigree" and the Federal appellate courts "accept the rule that there is no explicit public-interest exception to Article III in general or the mootness doctrine in particular." *Fialka-Feldman v.*

---

[9] As noted above, *City News* explicitly rejected the argument that *City of Erie* was decided purely on the speculation that Pap's could decide to reopen his business in the future. *See* 531 U.S. at 283-84; *supra* p. 5.

[10] Although not determinative to our decision, we note that the House, which is controlled by a political party other than the President's, withdrew as adverse intervenor after *Windsor*, *supra*, issued.

[11] Because we find that enforcement of section 101(31) against the appellant is not reasonably expected to recur, we need not further address the Secretary's argument that *this* case – an initial denial of benefits case – could not possibly recur because a future case would be a discontinuance or reduction case, a distinct action.

*Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 715-16 (6th Cir. 2011) (citing cases). Deciding the law in such a context would seem to constitute a pure advisory opinion, which is not permitted. *See Norvell v. Peake*, 22 Vet.App. 194, 200 (2008) ("[F]ederal courts are to decide only actual controversies by judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in the case before it." (internal quotation marks omitted)); *Waterhouse v. Principi*, 3 Vet.App. 473, 474 (1992) (Court should refrain from "an opinion advising what the law would be upon a hypothetical state of facts"); *see also Mokal*, *supra*.

## IV. CONCLUSION

Considering the governing Supreme Court and Federal Circuit authority and persuasive reasoning from the Federal appellate courts in general, we find that the circumstances of the Secretary's voluntary cessation indicate a genuine change in policy to cease enforcement of section 101(31) to the extent that it denies the provision of veterans benefits to veterans in lawful same-sex marriages, rather than an attempt to evade judicial review. We further find that the Secretary has established that it cannot reasonably be expected that he will revert to his previous conduct of enforcing section 101(31) and refusing to provide the appellant with spousal benefits. *See Friends of the Earth*, *supra*. The mere speculation that such a reversion could conceivably happen in the future is insufficient to avoid a finding of mootness. *See City News*, *supra*. Accordingly, the Secretary has met his burden to refute the voluntary cessation exception and this case is moot. The Board decision will be set aside and the appeal will be dismissed. *See Briley v. Shinseki*, 25 Vet.App. 196, 198 (2012) (dismissing appeal and setting aside Board decision because appeal became moot); *Landicho v. Brown*, 7 Vet.App. 42, 54 (1994) (same); *see also United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950) (noting "established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss"). Based on representations made at oral argument and his filings in this case, we trust that the Secretary is working diligently to provide all those who are eligible pursuant to the President's directive the VA benefits to which they are entitled.

Accordingly, it is

ORDERED that the August 30, 2011, decision of the Board is SET ASIDE. It is further

ORDERED that the Secretary's November 22, 2013, motion to dismiss is granted. It is further

ORDERED that all outstanding motions are denied and the appeal is DISMISSED for mootness.

DATED: March 11, 2014                                        PER CURIAM.

12