**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 23-2589

CHRISTOPHER C. HAMBIDGE, PETITIONER,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before TOTH, FALVEY, and JAQUITH, *Judges.*

**O R D E R**

TOTH, *Judge*, filed the opinion of the Court. FALVEY, *Judge*, filed a concurring opinion. JAQUITH, *Judge*, filed a dissenting opinion.

Christopher C. Hambidge has petitioned this Court for extraordinary relief in the form of an order enjoining the Secretary from applying 38 C.F.R. § 21.4020 to limit his continued entitlement to Post-9/11 GI Bill education benefits under 38 U.S.C. § 3301 *et seq.* (chapter 33 education benefits) while his administrative appeal proceeds. He asserted that the regulation is flatly inconsistent with 38 U.S.C. § 3695(c) and that he would suffer irreparable harm if his entitlement was not properly resolved before the beginning of the fall 2023 semester. For this Court to grant extraordinary relief in any form, the petitioner must show that there is no adequate alternative form of relief. Because Mr. Hambidge can appeal any future adverse Agency decision affecting his continued entitlement to chapter 33 education benefits to this Court, he has an adequate alternative means of relief. Moreover, the writ was sought on the basis of irreparable harm, the threat of which has been removed by action that correctly calculated Mr. Hambidge's eligibility for continued chapter 33 education benefits and did so before the fall 2023 semester began. Accordingly, extraordinary relief in the form of an injunction is not warranted.

**I. BACKGROUND**

There are no disputed facts in this case. *See* Secretary's June 26, 2023, Response at 1 (accepting the petitioner's facts and supporting exhibits "as true"). In 2011, Mr. Hambidge graduated with an undergraduate degree in business administration from The Citadel, the Military College of South Carolina. To pay for his education, he used Survivors' and Dependents' Educational Assistance under 38 U.S.C. § 3500 *et seq.* (chapter 35 benefits), to which he was entitled because of his father's military service. After graduating from The Citadel, Mr. Hambidge served as an officer in the Army for just over a decade, which included deployments to Afghanistan in support of Operation Enduring Freedom. Before being discharged from the Army, he was accepted into a Master of Business Administration (MBA) program at the University of North Carolina at Chapel Hill (UNC); he enrolled in the program in January 2023. He is currently attending the MBA program full-time and plans to graduate in December 2024.

Before enrolling in his MBA program, Mr. Hambidge filed a claim for chapter 33 education benefits based on his years of qualifying Army service. In September 2022, VA issued a certificate of eligibility (COE), notifying the petitioner that he is "entitled to 100% of the benefits payable under the Post-9/11 GI Bill program (chapter 33) for training offered by an institution of higher education." Petition, Exhibit A. But it also informed him that he could only receive seven months and five days of those benefits. Mr. Hambidge requested an audit detailing his usage of chapter 35 benefits and clarifying how the receipt of chapter 35 benefits affected his future receipt of chapter 33 benefits. The regional office (RO) responded two days later:

> [P]er [38 C.F.R. § 21.4020], the aggregate period for which any person may receive education benefits assistance under any combination of VA education programs may not exceed 48 months. Because you previously used 40 months and 25 days of benefits under Chapter 35, you may only be granted a maximum of 7 months and 5 days under the Post-9/11 GI Bill (Chapter 33).

Petition, Exhibit B. Mr. Hambidge then filed a direct Board appeal as to the September 2022 COE. He also requested advancement on the Board's docket, noting that the VA-published wait times for a Board decision likely meant that, before the Board could issue a decision, his chapter 33 education benefits would run out while he was in the middle of the fall 2023 semester. In February, the Board notified Mr. Hambidge that it received his appeal but that it would not docket the appeal until the RO supplied it with certain records necessary to evaluate whether to accept the appeal.

In May 2023, four relevant events occurred. On May 1, while his Board appeal remained pending, Mr. Hambidge sought extraordinary relief from this Court. Specifically, he requested that we enjoin the Secretary from applying § 21.4020 to limit his entitlement to chapter 33 education benefits during the pendency of his appeal, arguing that the regulation is flatly inconsistent with section 3695(c). He reasoned that an injunction would preserve this Court's jurisdiction by preventing irreparable harm—namely, the exhaustion of his chapter 33 education benefits in September 2023, in the middle of his MBA program but long before a Board decision was expected. On May 8, the Court ordered the Secretary to respond to Mr. Hambidge's petition. On May 16, the Board notified Mr. Hambidge that it received his motion to advance his case on the docket but was still waiting for the RO to provide relevant records. And on May 17, the RO issued a new COE, notifying Mr. Hambidge that he was "entitled to receive 100% of the benefits payable under the Post-9/11 GI Bill program for training offered by an institution of higher education" and therefore had 33 months and 15 days of full-time chapter 33 education benefits remaining. Secretary's June 26, 2023, Response, Exhibit D.

The Secretary argues that, because the RO concluded in the new COE that the petitioner is entitled to use the full allotment of chapter 33 education benefits, the requested relief has been provided and the petition is therefore moot. In response, Mr. Hambidge raises various arguments as to why his case is not moot.

## II. ANALYSIS

Under the All Writs Act, 28 U.S.C. § 1651, this Court has the authority to issue extraordinary writs in aid of its jurisdiction. *Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017). Extraordinary relief, however, is just as it sounds, a "drastic" remedy that should only be invoked in extraordinary circumstances. *Id.*; *see also Lamb v. Principi*, 284 F.3d 1378, 1382 (Fed. Cir. 2002) ("'Mandamus, prohibition and injunction against judges are drastic and extraordinary remedies. . . . As extraordinary remedies, they are reserved for really extraordinary causes.'" (ellipsis in original) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)). Here, the form of extraordinary relief that the petitioner seeks is an injunction, a remedy we have recognized is available under our All Writs Act authority. *See Moore v. Derwinski*, 1 Vet.App. 83, 84 (1990); *see also Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983) ("confirm[ing] the authority of appellate courts to entertain requests for injunctive relief under the All Writs Act"). Nevertheless, he would accept relief in the form of a writ of mandamus if the Court were to find such relief appropriate. *See* Petition at 9 n.1.

Because the petitioner requests either mandamus or injunctive relief, the Court sets out the distinct frameworks established for each. "A writ of mandamus may issue only when three conditions are satisfied," namely, (1) the petitioner shows a "'clear and indisputable' right to issuance of the writ under the relevant substantive law," (2) the petitioner has "'no other adequate means' to attain the desired relief, and (3) 'even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.'" *Wolfe v. McDonough*, 28 F.4th 1348, 1354 (Fed. Cir. 2022) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004)). To warrant injunctive relief, a party must demonstrate four conditions—"(1) that it will be immediately and irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors the petitioner." *Zenith Radio Corp.*, 710 F.2d at 809; *accord Rudisill v. McDonough*, 34 Vet.App. 176, 184 n.28 (2021), *rev'd* 55 F.4th 879 (Fed. Cir. 2022) (en banc), *cert. granted* 143 S. Ct. 2656 (June 26, 2023).

Yet, despite the distinctiveness of the two frameworks, they contain analogous inquiries. For example, the "clear and indisputable right" inquiry in the mandamus context and the "likelihood of success of the merits" inquiry in the injunction context both focus on whether the petitioner has demonstrated that the law supports his position, even if the former standard is more demanding than the latter. Similarly, an allegation of irreparable harm when seeking an injunction is tantamount to asserting that there is no adequate alternative means to obtain the desired relief, inasmuch as the threat of only remediable injuries precludes both injunctive and mandamus intervention. *See Lamb*, 284 F.3d at 1384.

In a recent case where a petitioner sought under the All Writs Act a stay of administrative action pending appeal, we concluded that the proper standard for relief synthesized both the traditional mandamus factors and the traditional stay factors. *Purpose Built Fams. Found., Inc. v. McDonough*, 36 Vet.App. 345, 357 (2023). Since the factors governing an injunction are substantially similar to the factors governing a stay, *see id.* at 353 n.43, we conclude a comparable approach is appropriate here.

3

Thus, to justify an injunction, Mr. Hambidge must show: (1) a lack of adequate alternative means to obtain the desired relief; (2) a likelihood of success on the merits of his appeal (this is akin to the "clear and indisputable right" inquiry but less demanding); (3) irreparable harm in the absence of such relief; (4) the public interest would be better served by an injunction; and (5) the balance of hardship on the petitioner and VA favors the petitioner. In this case, although there is no dispute that the merits of Mr. Hambidge's administrative appeal are strong, he has not shown that he lacks adequate alternative means to obtain the relief he seeks or that he will suffer irreparable harm unless an injunction issues. Based on these and the other factors, the Court concludes that neither mandamus nor injunctive relief is warranted.

We begin briefly with the statutory and regulatory landscape relevant to the petition. Specifically, Mr. Hambidge asks that the Court enjoin the Secretary from applying § 21.4020 to his claim for chapter 33 education benefits and to invalidate § 21.4020 so that it cannot be used against any veteran seeking a full allotment of such benefits. The basis of his request is that § 21.4020 unlawfully caps a veteran's usage of chapter 33 education benefits to 48 months, which contradicts the more generous 81-month cap imposed by the statute.

Before 2012, "[t]he aggregate period for which any person [could] receive assistance under two or more of the provisions of law listed below"—as relevant here, "Chapters 30, 32, 33, 34, 35, and 36" of title 38 of the U.S. Code—could "not exceed 48 months." 38 U.S.C. § 3695(a)(4) (2012). In 2012, Congress amended section 3695; it removed subsection (a)(4)'s reference to chapter 35 and added subsection (c), which provided an 81-month aggregate cap for use of chapter 35 benefits in combination with other VA education programs. Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012, Pub. L. No. 112-154, Title IV, § 401(a), 126 Stat. 1165, 1188. VA has not updated § 21.4020 to reflect this decade-old statutory alteration; it still provides that the "aggregate period for which any person may receive assistance" under "chapters 30, 32, 33, 34, 35, and 36" cannot "exceed 48 months." 38 C.F.R. § 21.4020(a)(1)(4) (2023).

There is no dispute that VA's regulation is inconsistent with section 3695; the Secretary all but concedes as much in his response. *See* Secretary's June 26, 2023, Response at 8 ("while the RO erroneously withheld benefits originally"), ("the Veteran's Benefits Manual M22-4 instructs ROs to adjudicate education benefits based on the statutory entitlements, to include the 81-month limit for receiving assistance under Chapter 35 and other Chapters"), at 9 ("Indeed, the RO has corrected the error."), at 10 ("internal VA guidance is to administer educational benefits based on the statute, to include the 81-month limit for receiving assistance under Chapter 35 and other Chapters"). And the Secretary's actions in this case, namely having the RO issue a revised COE and granting Mr. Hambidge full entitlement to chapter 33 benefits by ignoring the regulation's 48-month cap, speak even louder. Like Mr. Hambidge, the Court is baffled by the Secretary's failure to revise § 21.4020 to reflect the changes that Congress made to section 3695 a dozen years ago. The veteran has a strong likelihood of succeeding in his appeal (at the judicial, even if not at the administrative, level).

But this does not automatically entitle the veteran to a writ enjoining the Secretary from applying his regulation. The first reason is that Mr. Hambidge has adequate alternative means to obtain relief through the appeals process should VA attempt to enforce § 21.4020 against him.

4

Extraordinary relief "is unavailable when there is an adequate remedy by appeal." *Wolfe*, 28 F.4th at 1357. Traditionally, the writ in aid of jurisdiction was used to confine an inferior tribunal "to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority." *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 382 (1953). In this Court, the writ process is often used to "'compel action of the Secretary unlawfully withheld or unreasonably delayed.'" *Monk*, 855 F.3d at 1319 (quoting 38 U.S.C. § 7261(a)(2)). A writ, however, cannot be used to control decisions of a lower tribunal or an agency. *Bankers*, 346 U.S. at 383. Therefore, at minimum, a writ "cannot dictate a particular outcome" when it is clear such an outcome can be attained through an administrative appeal. *Wolfe*, 28 F.4th at 1358. This prohibition on using extraordinary writs as substitutes for appeals obtains "even though hardship may result from delay and perhaps unnecessary trial," for "whatever may be done without the writ may not be done with it." *Bankers*, 346 U.S. at 383.

In *Wolfe*, for example, the Federal Circuit cited the petitioner's ability to appeal her case to this Court as decisive in determining that adequate alternate relief was available. Indeed, at the time Ms. Wolfe filed her petition, she was pursuing an administrative appeal. The Federal Circuit found it significant that she never alleged that the administrative appeal was inadequate or that the Secretary had refused to proceed with or unreasonably delayed the appeal. *Wolfe*, 28 F.4th at 1357–58.

The same is true here. Mr. Hambidge does not allege that his administrative appeal is being unreasonably delayed or that VA is refusing to proceed with it. Nor does he assert that there is any impediment to this Court's review of a Board decision adverse to him. Absent such impediments, the normal appeal process serves as an adequate alternative means to obtain the relief the petitioner seeks: removal of the 48-month aggregate cap imposed by § 21.4020 on his chapter 33 education benefits. Indeed, the veteran confirms that he continues to pursue his appeal to the Board. December 21, 2023, Joint Response at 2.

Mr. Hambidge responds that he is not worried about the typical sort of hardship that might result while the appellate process unfolds. Rather, he contends, he is threatened with irreparable harm. The Court accepts for the sake of this case that "[s]ubstantial disruption to an educational program, particularly one already in progress, can constitute irreparable harm." Petition at 15–16; *cf. Rudisill*, 34 Vet.App. at 185. But the threat of such disruption no longer exists for the veteran.

When Mr. Hambidge filed this petition, he was pursuing an appeal to the Board from the September 2022 COE. Under that determination, he was not entitled to sufficient chapter 33 education benefits to complete his MBA program. Since then, however, he received a new COE concluding that he may receive the full 36 months of chapter 33 education benefits to which he is entitled under the Post-9/11 GI Bill, thereby allowing him to complete his MBA program. As the veteran concedes, the new COE determined and restored his entitlement to all the chapter 33 education benefits to which he believes he's entitled. Petitioner's August 28, 2023, Response at 5.

Mr. Hambidge nonetheless argues that the threat of irreparable harm persists because, without an injunction, the "[t]he chance of reapplication of the regulation is likely." *Id.* at 4. The Court is not persuaded, however. True, both the veteran and UNC are required to submit to VA regular reports and certifications on his proper usage of chapter 33 education benefits. *See, e.g.*,

5

38 C.F.R. §§ 21.4203 (2023), 21.4204 (2023), 21.9720 (2023), 21.9735 (2023). But there is no reason to think that this periodic reporting would trigger a redetermination by VA of the full extent of chapter 33 education benefits the veteran is entitled to claim. In other words, there is no likelihood that the Secretary will have occasion, following these proceedings, to apply § 21.4020's 48-month cap to him.

In sum, Mr. Hambidge has an adequate alternative remedy for the relief he seeks and is no longer threatened with irreparable harm. Accordingly, even if the other relevant factors were neutral or favorable to the veteran, the Court is not persuaded that the extraordinary remedy of an injunction pending resolution of his administrative appeal is appropriate.

A final word. The Court is troubled by VA's inaction on this issue. Most troubling has been its ongoing failure for more than a decade to revise § 21.4020 to reflect the changes to section 3695. As it stands, the regulation is flatly inconsistent with the statute. Remarkably, even as this petition brought that inconsistency front and center, there has been no formal notice by the Agency of its intention to amend § 21.4020 or even an informal representation to the Court that such efforts were underway. Mr. Hambidge's case demonstrates the dangers of VA's inaction on this legal issue. Nonfeasance is not too harsh a word to use in this context. The fact that Mr. Hambidge can challenge the regulation via his administrative appeal and will not suffer irreparable harm while he pursues that remedy suffice to make injunctive relief inappropriate here. But the Court strongly urges the Secretary to take corrective steps so that other veterans like Mr. Hambidge are not wrongly penalized by § 21.4020.

### III. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the May 1, 2023, petition for extraordinary relief is DENIED.

DATED: March 13, 2024                                    PER CURIAM.


FALVEY, *Judge*, concurring: I fully agree with the majority opinion. I write separately to highlight a legal point that may get lost as claimants try to navigate their disputes with VA through our narrow jurisdictional straits. Under section 7252, our jurisdiction is limited to review of Board decisions; our authority to issue writs under the AWA is confined to those "necessary or appropriate in aid of [our] jurisdiction . . . ." 28 U.S.C. § 1651(a). And the majority ably explains exactly why a writ is not necessary or appropriate here.

Mr. Hambidge has fundamentally failed to show that a writ would be in aid of our jurisdiction. Our recent cases have stressed this requirement. *See Purpose Built Fams. Found., Inc. v. McDonough*, 36 Vet.App. 345, 353-54 (2023) (explaining that, "as a threshold matter, petitioner must show that a writ is warranted under the AWA because it is in aid of the Court's prospective jurisdiction"); *Love v. McDonough*, 35 Vet.App. 336, 341-42 (2022). Yet Mr. Hambidge has not shown how our prospective jurisdiction would be jeopardized by him going through the regular appellate process. Thus, I would deny the petition because, along with the reasons explained by the majority, Mr. Hambidge has simply failed to show that a writ is in aid of our prospective

6

jurisdiction. *See Clinton v. Goldsmith*, 526 U.S. 529, 540 (1999) (reversing a fellow Article I court's grant of injunctive relief under the AWA because it "was neither 'in aid of [its] jurisdictio[n]' nor 'necessary or appropriate'") (alterations in original).

JAQUITH, *Judge*, dissenting: In my view, a preliminary injunction is warranted because the petitioner has shown (1) an extremely strong likelihood of success on the merits, (2) a viable threat of irreparable harm that both renders his alternative path to relief inadequate and would defeat our prospective appellate jurisdiction, (3) that the balance of equities overwhelmingly tilts his way, and (4) that an injunction is in the public interest; therefore, I respectfully dissent.

A.  Jurisdiction

As an initial matter, the Secretary asserts, as he often does, that the Court has no jurisdiction to address this petition. The Secretary says we have no jurisdiction here because the matter is moot and because the All Writs Act does not expand this Court's statutory jurisdiction to permit issuance of writs in aid of the Court's appellate jurisdiction. Secretary's Response at 5, n. 4.

Taking the Secretary's second assertion first, it is well settled that the AWA empowers the Court to issue writs in aid of its prospective jurisdiction "in the face of action . . . that would frustrate such prospective appellate jurisdiction." *Purpose Built Families Found., Inc. v. McDonough*, 36 Vet.App. 345, 354 (2023) (quoting *Margolis v. Banner*, 599 F.2d 435, 440-41 (C.C.P.A. 1979)) (alteration in original); *see, e.g., May v. McDonough*, 61 F.4th 963, 966 (Fed. Cir. 2023) (recognizing the power of the "Veterans Court . . . under the All Writs Act . . . , to issue a writ to 'protect its future jurisdiction'") (quoting *Martin v. O'Rourke*, 891 F.3d 1338, 1343 (Fed. Cir. 2018)); *Shorette v. McDonough*, 36 Vet.App. 297, 307–08 (2023). Extraordinary relief "does not aid prospective jurisdiction where a party has not initiated any proceeding whatsoever." *Wolfe v. McDonough*, 28 F.4th 1348, 1359 (Fed. Cir. 2022). But this is not such a case. The petitioner has an active appeal before the Board of Veterans' Appeals. *See* Petition Exhibits (Pet. Ex.) C, D, and E. VA obviously makes decisions on education benefits under laws that affect the provision of benefits within the meaning of 38 U.S.C. § 511(a). The petitioner asserts that denying educational benefits will force him "to pause or terminate his enrollment in his current graduate program, causing irreparable harm to his career and career prospects." Pet. at 3; Pet. Ex. G. He adds that without education benefits he would "be forced to take out significant student loans or access retirement savings in an attempt to remain on course to timely obtain [his] MBA," and that he would thereby "incur unnecessary fees, interest, penalties, and/or other impacts" that he could not be compensated for by subsequent restoration of his chapter 33 benefits at some indeterminate date. Pet. Exh. G. These alleged harms are unrebutted by the Secretary, *see* Secretary's Resp. at 1, accepted by the Court as true,[1] *ante* at 5, and would defeat the jurisdiction of the Court by

---

[1] "The Court accepts for the sake of this case that '[s]ubstantial disruption to an educational program, particularly one already in progress, can constitute irreparable harm.'" *Ante* at 5 (quoting Petition at 15–16). *See Rudisil*, 34 Vet.App. at 185 ("The harms that appellant alleges regarding timing and structuring of his life go beyond the dollar amount of the benefits."). Though they emphasize that the petitioner has an adequate alternative means of relief—his administrative appeal—neither the Secretary nor the Court describes how an appellate victory could repair the harms the petitioner identified. As the petitioner argues, there is no "express mechanism in the Post-9/11 GI Bill by which the Secretary can compensate [him] for lost education assistance benefits." Pet. at 3; Pet. Exh. G. For Post-9/11 GI Bill education benefits, 38 C.F.R. § 21.9770(b) (2023) references 38 C.F.R. § 21.7302, which provides that "[t]he decision of a VA facility of original jurisdiction on which an action is based—(3) Will not be subject to revision on

7

foreclosing it from affording any meaningful relief on appeal. *See F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966) ("[D]ecisions of [the Supreme] Court 'have recognized a limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels.'") (quoting *Arrow Transp. Co. v. S. Ry. Co.*, 372 U.S. 658, 671 n.22 (1963)). Therefore, Mr. Hambidge has shown that a writ is in aid of our jurisdiction and that, under the circumstances, his appeal does not afford an adequate alternate means of relief.

The mootness question is intertwined with the standards for injunctive relief, to which I now turn.

### B. Meeting the Standard for Injunctive Relief

The majority initially passes over the factors the Court considers to determine whether we should grant an injunction, as spelled out in *Rudisill*: "(1) whether appellant is likely to succeed on the merits; (2) whether appellant is likely to suffer irreparable harm in the absence of injunctive relief; (3) whether the balance of equities tip in his favor; and (4) whether the injunction is in the public interest." *Rudisill v. McDonough*, 34 Vet.App. 176, 184 (2021). *Rudisill* echoes the Supreme Court's injunction standard. *See Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). Relying on *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983), the majority prefers an immediate irreparable harm element, jumpstarting its journey to inaction. *Ante* at 3. However, *Zenith Radio* goes on to restate the irreparable harm factor as requiring "'a viable threat of serious harm that cannot be undone.'" *Zenith Radio Corp.*, 710 F.2d at 809 (quoting *S.J. Stile Assoc. Ltd. v. Snyder*, 646 F.2d 522, 525 (Cust. & Pat. App. 1981)). Since *Zenith Radio Corp.,* the Court of Appeals for the Federal Circuit has focused on "'the threat of irreparable harm to the movant should a preliminary injunction be denied'" for over 35 years. *See Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991) (quoting *Pretty Punch Shoppettes v. Hauk*, 844 F.2d 782, 783 (Fed. Cir. 1988)). And the Federal Circuit now embraces *Winter's* formulation of the factor as whether the petitioner is "'likely to suffer irreparable harm in the absence of preliminary relief.'" *ABC Corp. I v. P'ship & Unincorp. Assoc'ns Identified on Sched. "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022) (quoting *Winter*, 555 U.S. at 20).

---

the same factual grounds except by duly constituted appellate authorities or except as provided in § 21.7303 of this part." 38 C.F.R. § 21.7302(a)(3) (2023). Unfortunately, the appellate process elongates the disruption to an educational program and if the veteran wins the Court can neither turn back the clock nor award "interest or damages stemming from a previous wrongful denial of benefits." *In re Proposed Amend. to R. 26(b)*, 12 Vet.App. 432, 433 (1998) (per curiam order); *see Sandstrom v. Principi*, 358 F.3d 1376 (Fed. Cir. 2004); *Ribaudo v. Nicholson*, 21 Vet.App. 137, 152 (2007) (Schoelen, J. concurring in part and dissenting in part) ("[D]elaying the payment of benefits would not render . . . claimants whole monetarily because the failure to provide benefits immediately would have substantial repercussions."). For example, in *Pratt v. McDonough*, No. 23-3098, 2023 WL 4863286, at *1 (Vet. App. July 31, 2023) (mem. dec.), a VA regional office "informed the petitioner that VA was 'unable to reimburse the interest paid on [his] school loans as these fees [were] not required by the schools [he] attended.'"

Moreover, in deciding whether to issue a preliminary injunction, "[a]lthough 'no single factor is dispositive,' the "probability of success [] is the most significant." *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (quoting *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021)).[2] Last year, this Court noted that "after the Supreme Court's decision in *Winter*, the circuit courts have been split on whether the factors for injunctive relief employ a 'sliding scale' balancing test," under which "a preliminary injunction may be warranted when a stronger showing of one factor offsets a weaker showing of another." *Purpose Built Families Found., Inc. v. McDonough*, 36 Vet.App. 345, 357 n. 70 (2023). Our Court declared that "[w]e need not weigh in on whether a sliding scale approach is applicable to the Court's [U.S. Vet. App. R.] 8 analysis," because "petitioner ha[d] entirely failed to show a likelihood of success on the merits." *Id.* The same month as our *Purpose Built Families* decision, the Fifth Circuit reaffirmed that "[f]or preliminary injunctions, 'none of the . . . prerequisites has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus.'" *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)).

In my view, any tension between the approaches of the circuit courts is more apparent than real. *Mock* recognized that the preliminary injunction factors—likelihood of success on the merits, irreparable harm, and the balance of equities and the public interest favoring injunctive relief—are prerequisites. 75 F.4th at 586-87. Though the Ninth Circuit "use[s] a 'sliding scale' approach to [*Winter's* preliminary injunction] factors, according to which 'stronger showing of one element may offset a weaker showing of another,'" it highlights up front that "[a]ll four elements must be satisfied." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). And balancing the equities is an express *Winter* factor. *See Winter*, 555 U.S. at 20. "Supreme Court precedent, every regional circuit, and controlling Federal Circuit precedent, apply to the preliminary injunction the combination of criteria that includes likelihood of success on the merits and equitable considerations." *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341, 1364 (Fed. Cir. 2008). As Justice Ginsburg observed in her dissent in *Winter*:

> [C]ourts do not insist that litigants uniformly show a particular, predetermined quantum of probable success or injury before awarding equitable relief. Instead, courts have evaluated claims for equitable relief on a "sliding scale," sometimes awarding relief based on a lower likelihood of harm when the likelihood of success

[2] *See also, e.g., A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 771 (7th Cir. 2023) ("The first, and normally the most important, criterion is likelihood of success on the merits."); *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127–28 (11th Cir. 2022) (observing that likelihood of success on the merits is "the most important preliminary-injunction criterion"); *California by & through Becerra v. Azar*, 950 F.3d 1067, 1083 (9th Cir. 2020) (en banc) ("The first factor—likelihood of success on the merits—'is the most important' factor.") (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)); *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) ("We begin with the first and most important factor: whether petitioners have established a likelihood of success on the merits."); *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) ("Success on the merits previously has been held to be the most important factor for a court to consider when deciding whether to issue injunctive relief. *See Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed.Cir.2007)."). *See generally Nken v. Holder*, 556 U.S. 418, 434 (2009) (declaring, in the context of considering the issuance of a stay, that "the most critical" factors are the likelihood of success on the merits and irreparable harm absent a stay).

is very high. This Court has never rejected that formulation, and I do not believe it does so today.

555 U.S. at 51 (Ginsburg, J., dissenting)(citation omitted). In this case, injunctive relief is warranted because the likelihood of success is extremely high, the threat of harm remains real, that harm is irreparable, and the balance of equities and the public interest both favor maintaining the status quo. *See Aamer*, 742 F.3d at 1043 ("The primary 'purpose of a preliminary injunction is to preserve the object of the controversy in its then existing condition—to preserve the status quo.'" (quoting *Doeskin Products, Inc. v. United Paper Co.*, 195 F.2d 356, 358 (7th Cir.1952)); *Ribaudo*, 21 Vet.App. at 141 ("[T]he party seeking to maintain the status quo through a stay need only raise questions on the merits that are 'so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.'" (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2nd Cir.1953)); *Purpose Built Families*, 36 Vet.App. at 362 (same).

Whether the Court requires immediate irreparable harm or a viable threat of irreparable harm is pivotal here. It is clear that the petitioner is not suffering irreparable harm at this moment, because the RO issued a new certificate of eligibility that authorized VA payment of education benefits to apply to the current costs. On that basis, the majority declares that there is "no likelihood that the Secretary will . . . have occasion, following these proceedings, to apply § 21.4020's 48-month cap to him." But that declaration is grounded in optimism, not evidence. The evidence points in a different direction.

As the Court notes, VA's nonfeasance has persisted for more than a decade. Since its enactment in August 2012, effective October 1, 2013, as part of the Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012,[3] section 3695(c) has provided that veterans like the petitioner are entitled to education benefits under chapter 35 and chapter 33 for an aggregate period of 81 months. But VA has "honored" veterans by not implementing section 3695(c), including not changing § 21.4020's 48-month cap, notwithstanding the obvious conflict between imposing a 48-month cap when entitlement to up to 81 months of education benefits is the law.

The veteran points out that he is not the only one whose education benefits have been cut off in reliance on § 21.4020 since section 3695(c) required otherwise, citing cases in 2016 and 2022. Pet. at 2 (citing Bd. Vet. App. 1646321, 2016 WL 8190695 at *2, *6 (Dec. 9, 2016), and Bd. Vet. App. 22067681, 2022 WL 18541698 at *1, *4 (Dec. 8, 2022)). Both cases required Board action but neither case spurred effective change. So it was that in September 2022, a VA regional office (RO) acknowledged that the petitioner was entitled to chapter 33 benefits but erroneously stated that his entitlement was only for 7 months and 5 days. Pet. Ex. A. The RO gave no reason for its determination, only a citation to the regulation, 38 C.F.R. § 21. 9550, that provides that "an eligible individual is entitled to a maximum of 36 months of educational assistance . . . under 38 U.S.C. chapter 33."

---

[3] Pub. L. No. 112-154, § 401, 126 Stat. 1165, 1188 (2012).

In October 2022, the petitioner requested an audit, including an explanation of VA's authority to limit the benefits he earned by his active service based on the benefits he received because of his father's service. Pet. Ex. B. VA promptly responded, specifying that § 21.4020 limited the aggregate period for the petitioner to receive educational benefits to 48 months, so he could only be granted a maximum of 7 months and 5 days of chapter 33 benefits. *Id.*

In the face of VA's intransigence, the Court finds and the Secretary seems to acknowledge that Mr. Hambidge is virtually certain to succeed on the merits because § 21.4020 is plainly inconsistent with section 3695(c), and "[i]t is axiomatic that a regulation may not trump the plain language of a statute." *Swain v. McDonald*, 27 Vet.App. 219, 224 (2015). When a statute and a regulation conflict, the statute controls as a matter of law. *See Dolbin v. McDonough*, 34 Vet.App. 334, 337 (2021) (order), *dismissed as moot*, No. 2021-2373, 2023 WL 2981495 (Fed. Cir. 2022); *Carr v. McDonough*, 33 Vet.App. 285, 290 (2021) (holding that a regulation is invalid to the extent that it bars educational assistance benefits to which a veteran is entitled by statute).

The veteran timely appealed to the Board and submitted a detailed memorandum in support of his appeal, describing what the RO had done and arguing that section 3695(c) required the Board to grant him the full 36 months of benefits to which he was entitled (not merely 7 months and 5 days). Pet. Ex. C. In February 2023, the veteran submitted a motion to advance his case on the docket, describing his urgent need for his full entitlement to education benefits and the irreparable harm he would suffer if those benefits were denied. Pet. Ex. D. The Board acknowledged receipt of his appeal but replied that the Board needed to request records from the RO and review them to determine whether the Board could accept his appeal. Pet. Ex. E. On May 16, 2023, the Board acknowledged receipt of the veteran's February 2023 motion, repeated that the Board had requested records from the RO so the Board could determine whether to accept the appeal, and advised that the Board would decide the veteran's motion to advance his case on the docket when it decided whether to accept his appeal. Secretary's Resp. Ex. C. However, the next day, May 17, 2023, the RO sent the veteran a certificate of eligibility for 33 months and 15 days of education benefits. Secretary's Resp. Ex. D. The certificate noted neither section 3695(c) nor § 21.4020 and offered no explanation for the new eligibility determination. Other than the number of months and days of eligibility, the May 2023 certificate was the same as the September 2022 certificate.

The Secretary blames the veteran for his predicament because he is appealing to the Board rather than trusting the RO to correct its error on higher level review by applying the Veterans Benefits Manual (M22-4). Secretary's Resp. at 8. There are several problems with the Secretary's response. First, the manual provision did not prevent either the error in this case or the errors chronicled in the 2016 and 2022 Board decisions the veteran cited. Second, the manual provision is not binding. *See, e.g., Natl. Org. of Veterans' Advocates, Inc. v. Sec. of Veterans Affairs*, 981 F.3d 1360, 1376 (Fed. Cir. 2020); *Healey v. McDonough*, 33 Vet.App. 312, 320 (2021); 38 C.F.R. § 20.105 (2023) ("The Board is not bound by Department manuals."). The Secretary refers to the manual as "internal VA guidance." Secretary's Resp. at 10. Third, the manual is not a model of clarity on this issue. The subsection the Secretary relies upon, section 4.07 (titled "The 81-Month Rule"), offers little assurance that adjudicators will apply the statute correctly. Section 4.07 cites the public law that enacted section 3695(c), but not the statute itself. Section 4.07 does not mention § 21.4020 (much less any conflict between the statute and the regulation). Section 4.07 notes that an October 2013 public law, "authorizes VA to award up to 81 months of entitlement to individuals who use the Survivors' and Dependent's Educational Assistance program (Chapter 35) combined

11

with entitlement from the other VA education programs." Veterans Benefits Manual (M22-4), pt. 12, ch. 2, sec. 4.07 (last updated Dec. 18, 2015) (available at https://www.knowva.ebenefits.va. gov/system/templates/selfservice/va_ssnew/help/customer/locale/en-US/portal/ 554400000001018/content/554400000073785/Sub-Chapter-4-Entitlement-Issues#407). However, more than 11 years after the statute's enactment, the manual says that "[t]o deal with this scenario, VA is in the process of adding functionality to [technology] systems," and that "[i]n the meantime, manual procedures will be used by . . . personnel in the adjudication of affected claims." *Id*. And a preceding section of subchapter 4 gives but one example of "Eligibility for Post-9/11 GI Bill and Another VA Education Benefit," saying that the veteran "is eligible for a maximum of 48 months under any two VA programs." *Id.* at section 4.02.

Most tellingly, the Secretary offers no commitment or plan to square § 21.4020 with section 3695(c). Nearly 18 months after the RO applied the regulation to limit the petitioner's benefits and nearly 15 months after the Board dealt with an RO misapplying § 21.4020 to limit another veteran's benefits, the regulation remains unchanged.

Instead of meaningful steps to ensure that adjudicators get it right, so an injunction would have nothing to enjoin, the Secretary makes another argument that puts the onus on veterans. The Secretary argues that enjoining VA from denying education benefits to which veterans are entitled under section 3695(c) "would be against the public interest" because it would "encourage claimants to assume financial or other obligations in anticipation of the receipt of VA benefits but prior to the actual grant of such benefits, then seek the extraordinary remedy of an injunction as a routine matter in place of the normal appeal process." Secretary's Resp. at 11. It sounds like the Secretary shares the petitioner's lack of confidence that section 3695(c) will be faithfully applied (to override § 21.4020) so that veterans' statutory entitlement will be fulfilled.

"[W]hen the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief." *E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 743 (1st Cir. 1996). In addition to the high likelihood of success, the balance of equities and the public interest also overwhelmingly favor the petitioner. The petitioner is a U.S. Army veteran whose active service of over 10 years included three deployments to Afghanistan. Pet. Ex. F, G. And his father served in the U.S. Navy for over 29 years. Pet. Ex. G. Based on his father's service, the petitioner was entitled to and received educational assistance, under chapter 35 of title 38 of the United States Code, to pay some of the costs of earning his college degree at The Citadel, the Military College of South Carolina, which he did before beginning active Army service. Pet. at 7; *see* 38 U.S.C. §§ 3501, 3510 (eligible spouses and children of disabled veterans are entitled to receive educational assistance). After his active service, the petitioner was accepted into an MBA program at the University of North Carolina at Chapel Hill and applied for the education benefits to which he was entitled, based on his own service, under chapter 33. Pet. Ex. G.; *see* 38 U.S.C. § 3311(a) (establishing an entitlement to educational assistance for covered individuals who served in the armed forces on or after September 11, 2001).

Veterans benefits—including education benefits—are statutorily mandated, not discretionary. *See Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009). A veteran who meets the statutory eligibility requirements is entitled to benefits. *Id.* "These statutes provide an

absolute right of benefits to qualified individuals." *Id.* at 1297. "[S]uch entitlement to benefits is a property interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution." *Id.* at 1298; *see Devine v. Cleland*, 616 F.2d 1080, 1086 (9th Cir. 1980).

Moreover, the veterans benefits system "is strongly and uniquely pro-claimant." *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998). The public interest screams in favor of the veteran because the possibility of any harm to the Secretary in satisfying the veteran's statutory entitlement to education benefits is miniscule, even nonexistent, but the veteran faces irreparable harm without those benefits, and it is a core value of our Nation to care for those who have borne the battle and for their surviving spouses and children. *See Ribaudo*, 21 Vet.App. at 162 (Schoelen, J., dissenting). That core value reflects national gratitude for the special sacrifices made by veterans and sets the overriding purpose of veterans benefits laws. *Barrera v. Gober*, 122 F.3d 1030, 1039-40 (Fed. Cir. 1997) (Plager, J., concurring); *see Sneed v. Shinseki*, 737 F.3d 719, 728 (Fed. Cir. 2013) ("The veterans benefits scheme is . . . 'imbued with special beneficence from a grateful sovereign.'" (quoting *Bailey v. West*, 160 F.3d 1360, 1370 (Fed. Cir. 1998) (Michel, J., concurring)). Education benefits address veterans' extreme sacrifices, including their loss of educational advantages, job opportunities, and business ventures, as well as serious difficulties in readjusting to civilian life. *See Johnson v. Robison*, 415 U.S. 361, 380-81 n. 15 (1974).

## C.  Mootness Exceptions Apply

Two related exceptions to mootness apply to this situation: voluntary cessation and capable-of-repetition-but-evading-review. "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice, even in cases in which injunctive relief is sought." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020). Official abandonment of a challenged practice "is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice," *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982), and "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Id.* at 289 n.10; *see Cardona v. Shinseki*, 26 Vet.App. 472, 476 (2014) (noting that the voluntary cessation exception is based on the concern that a party could resume the challenged conduct after evading judicial review). Though "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," a petitioner still has to show a threat of injury to obtain an injunction. *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 190-92 (2000).

"'[P]ast wrongs are evidence' of the likelihood of future injury,' but 'do not in themselves amount to the threat of injury necessary to warrant an injunction.'" *Missouri v. Biden*, 83 F.4th 350, 367 (5th Cir. 2023) (quoting *Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 375 (5th Cir. 2021)(alteration in original). However, "'[w]here the harm alleged is directly traceable to a written policy . . . . there is an implicit likelihood of its repetition in the immediate future.'" *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005) (alterations in original)). Therefore, a petitioner "may 'demonstrate that [an] injury is likely to recur' by showing 'that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy.'" *Fortyune*, 364 F.3d at 1081 (quoting

*Armstrong*, 275 F.3d at 861). In this case, it is beyond cavil that the injury stems from something stronger and more enduring than mere policy: a longstanding regulation.

In *Cardona*, this Court surveyed caselaw on the voluntary cessation exception to mootness. 26 Vet.App. at 476-81. Important here, *Cardona* summarizes cases where "government officials provided insufficient evidence of actual change" as follows:

> *See CSI Aviation Servs., Inc. v. U.S. Dep't of Trans.*, 637 F.3d 408, 414 (D.C. Cir. 2011) (rejecting mootness argument because "promised rulemaking has yet to occur and CSI's exemption is merely temporary"); *Seneca v. Arizona*, 345 Fed.Appx. 226, 228 (9th Cir. 2009) ("merely fil[ing] an affidavit stating that the 'policy changed'" is insufficient to demonstrate mootness); *Rothe [Development Corp. v. Department of Defense*, 413 F.3d 1327, 1332-33 (Fed. Cir. 2005)] . . . ; *Gates v. Cook*, 376 F.3d 323, 337 (5th Cir. 2004) (Department's "assertions that it intends to meet these standards do not suffice to moot the issue"); *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 574 (2d Cir. 2003) (mere testimony of changed interpretation is insufficient to demonstrate mootness); *N.Y. Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 327 (2d Cir. 2003) (mere "letter of commitment" is insufficient to demonstrate mootness); *Am. Iron & Steel Inst. v. E.P.A.*, 115 F.3d 979, 1007 (D.C. Cir. 1997) (rejecting mootness argument because Agency's change, inter alia, "could be ignored by local EPA officials").

*Cardona*, 26 Vet.App. at 481 n.7. The circumstances in this case fit within the *Cardona* summary.

As the petitioner argues, the capable-of-repetition-yet-evading-review exception also defeats mootness here. *See* Petition at 10. The mootness exception for matters capable of repetition but evading review applies when "'(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *NIKA Techs., Inc. v. United States*, 987 F.3d 1025, 1027–28 (Fed. Cir. 2021) (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (holding that the exception applied because the contracts at issue would be fully performed is less than two years, a period "too short to complete judicial review of the lawfulness of the procurement.")) (alterations in original). Regarding the expectation that the petitioner will experience the same problem again, "[t]he question is 'whether the controversy [is] *capable of repetition* and not . . . whether the claimant [has] demonstrated that a recurrence of the dispute was more probable than not.'" *Id*. at 1028 (quoting *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988) (alterations in original). This "narrow exception applies to disputes that by their nature will become moot before litigation runs its course, such as a college graduation date, and thus are 'likely forever' to evade appellate review." *Radiant Glob. Logistics, Inc. v. Furstenau*, 951 F.3d 393, 396 (6th Cir. 2020) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481–82 (1990)). Disputes over education programs "are generally too short in duration to be fully litigated prior to cessation or expiration" because they last for one year or less and administrative and judicial review processes take longer. *K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d 1195, 1200 (11th Cir. 2013); *A.D. ex rel. L.D. v. Hawaii Dept. of Educ.*, 727 F.3d 911, 914 (9th Cir. 2013) (holding that, because every 20–year–old challenger to a statutory limit to special education eligibility will age out within

14

two years, "[t]he litigation window might never stay open long enough to resolve whether such students are entitled to stay-put injunctions.").

## D. Conclusion

Like the majority, I am troubled by VA's "ongoing failure for more than a decade to revise § 21.4020 to reflect the changes to section 3695." *Ante* at 6. And I join the majority in "strongly urg[ing] the Secretary to take corrective steps so that other veterans like Mr. Hambidge are not wrongly penalized by § 21.4020." *Id.* But the circumstances here warrant more than concern and exhortation. I would grant Mr. Hambidge a preliminary injunction to preserve the status quo pending the resolution of his appeal.